707 F.2d 829
 31 Fair Empl.Prac.Cas. 1219,
33 Fair Empl.Prac.Cas. 1670,
31 Empl. Prac. Dec. P 33,579
Marie FLEMING, and others similarly situated, Plaintiffs-Appellants,
v.
TRAVENOL LABORATORIES, INC., Defendant-Appellee.
 No. 82-4408
 Summary Calendar.
United States Court of Appeals,
 Fifth Circuit.
May 9, 1983.
 
 Cleve McDowell, Cleveland, Miss., for plaintiffs-appellants.
 Cadwalader, Wickersham & Taft, Stephen N. Shulman, Mark C. Ellenberg, Washington, D.C., Freeland & Gafford, James L. Robertson, Oxford, Miss., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Mississippi.
 Before REAVLEY, GARWOOD and JOLLY, Circuit Judges.
 E. GRADY JOLLY, Circuit Judge:
 
 I.
 
 1
 Plaintiff, Marie Fleming, filed this Title VII sex discrimination class action suit against defendant, Travenol Laboratories, Inc. (Travenol), prior to summary judgment dismissal of her race discrimination case arising from the same transaction as here and against the same defendant. The district judge declined to certify the proposed female class and subsequently found that res judicata barred Fleming's individual sex discrimination claim. Fleming appeals. We affirm.
 
 
 2
 Fleming, a white female, was employed by Travenol as an Assembler. On October 10, 1980, she signed the name of another employee, James Sutton, a black male, to one of the records that Travenol, as a pharmaceutical manufacturer, was required to keep under Federal Food and Drug Administration regulations. The record, a "Printed Material Accountability Record," is a contemporaneous accounting of product labels used by an employee during a shift.
 
 
 3
 As a result of this conduct, which neither Fleming nor Sutton denied, both employees were suspended for thirty days and removed from their assigned jobs. Fleming was, at the end of her thirty-day suspension, to be placed, for at least six months, in a position which specifically did not require use of the Printed Material Accountability Records. Sutton received an identical reassignment. Both employees were notified by letter that they should contact the personnel office five days prior to the end of the thirty-day suspension period to ascertain what jobs at that time were available for their reassignment.
 
 
 4
 At the end of her suspension Fleming did so and was notified that there were available three second-shift jobs, two for Material Handler and one for Steam Sterilization Operator, and one first-shift job, Assembler, in a department other than the one in which she had previously worked. All of the second-shift jobs would have paid more than Fleming had earned prior to her suspension, and the Assembler job would have paid the same. A letter confirming the available positions further informed Fleming that she could accept any of the open jobs while bidding on future openings as they were posted and that she could protest her job assignment and suspension through the company's Internal Problem Resolution Committee. The letter finally advised Fleming that should she fail to report for work for three consecutive days, she would be terminated as a "voluntary quit."
 
 
 5
 Fleming rejected each of the proffered jobs and was deemed a "voluntary quit" after her third consecutive day of unauthorized absence. Sutton accepted one of the proffered jobs and, as far as the record shows, is still employed by Travenol.
 
 
 6
 On the last day of the thirty-day suspension, Fleming and Sutton instituted a civil action for damages and an injunction against Travenol and certain Travenol managerial personnel, alleging violation of their rights under the first, fourth, fifth, eighth and fourteenth amendments to the United States Constitution, and under 42 U.S.C. Secs. 1981, 1983, 1985, 1986 and 1988.[1] The catalyst for the suit was the suspension of the two plaintiffs without pay and plaintiff Fleming's subsequent discharge. The complaint alleged that Fleming was being abused by her white female supervisor because Fleming worked well with black employees whom the supervisor disliked intensely. The complaint further averred that the summary disciplinary actions violated the due process clause of the fourteenth amendment and that all of the defendant's acts had been performed "willfully, maliciously, callously, and recklessly." Plaintiffs sought back pay, reinstatement to their former positions, and an injunction against "maintaining and keeping" employees working under "unconstitutional and unlawful procedures, rules, regulations and conditions."
 
 
 7
 While her racial discrimination complaint was pending in the district court, Fleming filed a complaint with the Equal Employment Opportunity Commission (EEOC), alleging sex and age discrimination by the defendants. The EEOC charge alleged that Fleming was suspended and dismissed from Travenol because of her age (45) and sex. The specific allegations of discrimination included charges that the defendants instituted less harsh disciplinary actions against males and younger persons who had committed acts similar to hers; that Sutton, a younger male, was "not demoted to the night shift or to a job he is not physically capable of performing;" and that she was discharged because she refused reassignment to jobs "which only males have performed in the past and which I am physically unable to perform." On or about January 20, 1981, Fleming received an EEOC right-to-sue letter, and rather than amending her pending complaint, instituted the instant action in federal court on February 2, 1981. Five weeks later, on March 11, 1981, the district judge in the initial race discrimination suit granted summary judgment for defendants on the plaintiffs' first, eighth and fourteenth amendment claims and 42 U.S.C. Secs. 1981 and 1983 claims. The 42 U.S.C. Secs. 1985(3) and 1986 claims were dismissed for failure to state a claim upon which relief could be granted.[2] The judgment of the court dismissed the complaint in its entirety.
 
 
 8
 On May 14, 1981, Fleming filed a Motion for Class Certification. The motion defined the class as "all other female persons similarly situated" including those wrongfully discharged, those subjected to unequal treatment, and those current Travenol employees whose opportunities had been limited by Travenol's discriminatory employment practices and Travenol's "reputation for engaging in discriminatory employment practices." The motion, in boiler-plate fashion, cited Fed.R.Civ.P. 23(a)'s requirements, but failed to include any factual allegations on which the trial judge could evaluate these factors. Fleming furnished no affidavits or other evidence to support her certification attempt. The basic thrust of the motion and her brief was that the Fifth Circuit has attached special importance to class actions under Title VII, citing Rodriguez v. East Texas Motor Freight, 505 F.2d 40, 50 (5th Cir.1974); Jenkins v. United Gas Corp., 400 F.2d 28, 33 (5th Cir.1968); Oatis v. Crown-Zellerbach Corp., 398 F.2d 496, 499 (5th Cir.1968).
 
 
 9
 The district court on September 23, 1981, declined to certify the class after finding that the plaintiff had failed to develop sufficient evidence to demonstrate that the Rule 23 requirements had been met. No discovery was ever undertaken.
 
 
 10
 The final pre-trial order on Fleming's individual claim, entered on April 13, 1982, reflected that the contested issues of fact centered around the plaintiff's suspension and discharge, while the contested issues of law were whether res judicata or collateral estoppel precluded Fleming's second suit. Pending at the time of pre-trial was Travenol's motion for summary judgment.
 
 
 11
 The district judge found that Fleming's two suits were based on the same cause of action, both seeking to recover for the same wrong, and that the second suit was thus barred by res judicata. The court granted summary judgment for Travenol. Fleming has filed a timely appeal.
 
 II.
 
 12
 On appeal Fleming contends that the district court erred in denying her motion for class certification and in finding her second action barred by res judicata.
 
 A.
 
 13
 In arguing that the district court incorrectly denied plaintiff's proposal for class certification, Fleming contends that "without citing numerous cases that are well known to the Court, it is sufficient to urge the Court to note that the allegations set out above, without evidence to the contrary, are sufficient to meet the requirements of Rule 23 F.R.C.P....."
 
 
 14
 These allegations include contentions that the class is so numerous that it is not possible to estimate its size (although we are not given any inkling of the number of female employees even currently employed by Travenol); that the common questions of law or fact include whether Travenol's employment practices discriminate or have discriminated unlawfully against members of the class "on the basis of th[ei]r race " (even though we have no hint of what any of those employment practices might be); that the typicality requirement is met because "they are based sex [sic] discrimination practices"; and that Fleming is an adequate class representative since her interest in not being discriminated against because of her sex is coextensive with the interests of the class and that the attorney is qualified to conduct this litigation (again with no factual support).
 
 
 15
 Thus the sum and substance of Fleming's claim for class certification are the allegations in her pleading, her own suspension and discharge from Travenol, and "numerous cases that are well known to the Court."
 
 
 16
 The plaintiff in a class action suit has the burden of establishing the prerequisites of Rule 23. Patterson v. General Motors Corp., 631 F.2d 476, 481 (7th Cir.1980); Taylor v. Safeway Stores, Inc., 524 F.2d 263, 269 (10th Cir.1975). Those prerequisites include: 1) a class so numerous that joinder of all members is impracticable; 2) questions of law or fact common to the class; 3) typicality between the claims of the representative and the claims of the other class members; and 4) a representative, including his or her attorney, who will fairly and adequately represent the interests of the class. Fed.R.Civ.P. 23(a). Fleming's suit is brought under Fed.R.Civ.P. 23(b)(2) which requires, in addition, a showing that the defendant Travenol acted, or refused to act, on grounds generally applicable to all the members of the class.
 
 
 17
 Fleming's apparent reliance below on the Fifth Circuit's "across-the-board" approach to Title VII class action suits is no longer legally sound. Although this circuit formerly permitted victims of employment discrimination to maintain an "across-the-board" attack on all unequal employment practices alleged to have been committed by the employer pursuant to a policy of discrimination, Payne v. Travenol Laboratories, Inc., 565 F.2d 895 (5th Cir.), cert. denied, 439 U.S. 835, 99 S.Ct. 118, 58 L.Ed.2d 131 (1978); Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5th Cir.1969), that practice was limited by the United States Supreme Court in General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).[3] In reversing the Fifth Circuit's allowance of an across-the-board class action attack, the Court stated explicitly that a "Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Falcon, 102 S.Ct. at 2373. Moreover, the class representative must be part of the class and possess the same interests and suffer the same injury as the class members. Falcon, 102 S.Ct. at 2370; East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977).
 
 
 18
 Here we have no factual basis for determining whether the numerosity requirement has been met. The mere allegation that the class is too numerous to make joinder practicable, by itself, is not sufficient to meet this prerequisite. We likewise have only broad, general allegations to support the common questions of law or fact and the typicality requirements. Fleming's only specific factual allegation is her suspension and discharge from Travenol.
 
 
 19
 The unsupported allegations of discrimination include the failure to recruit and hire females, the denial of equal job opportunities, the failure to transfer or promote females, and the use of subjective, non-job related hiring criteria, all of which adversely affect females.
 
 
 20
 These allegations, even if true, are not applicable to Fleming, the proposed class representative. She was, in fact, hired, and she was offered the same jobs as her fellow male employee, Sutton. She thus suffered no denial of opportunities based on her sex. Her acceptance of one of the three proffered second-shift jobs would have constituted both a transfer and a promotion; thus the failure to promote and transfer allegation is not typical of her own claim.
 
 
 21
 Faced with a complete lack of data, evidence, memoranda or anything other than the allegations of Fleming's complaint, the district court correctly denied certification of Fleming's proposed class.
 
 B.
 
 22
 Fleming's legal citations in support of her argument that res judicata does not bar the second suit predate 1950 and in no way reflect the current state of the law on this issue. In any event, these arguments are foreclosed by our en banc decision in Nilsen v. City of Moss Point, 701 F.2d 556 (5th Cir.1983) (en banc). There Ms. Nilsen sought to recover against the city for its failure to hire her as a firefighter, first under Title VII, and then, in a subsequent action, under 42 U.S.C. Sec. 1983. In Nilsen, we said that an adverse judgment on the merits of Ms. Nilsen's Title VII action barred her successive action raising a Sec. 1983 claim.[4] Nilsen, at 564. In so doing we noted that:
 
 
 23
 [Nilsen's] claims here are based "upon the same facts and circumstances as are alleged [in her previous suits]": in a word, upon the same transaction. Moreover, the same right, to be free of intentional sex discrimination in employment, is claimed to have been infringed by the same wrong, that discrimination. The primary right and duty asserted and the primary wrong complained of are the same in each action. Only the legal bases advanced for relief are different.
 
 
 24
 Nilsen, at 559.
 
 
 25
 Here the factual basis for Fleming's Title VII claim, her suspension and discharge from Travenol, is the same as the factual basis adjudged against her in her earlier Sec. 1983 and fourteenth amendment claims against Travenol. Even though the legal basis here is different, Title VII as opposed to Sec. 1983 and fourteenth amendment, and she now claims sex discrimination as opposed to her earlier charge of race discrimination, the same wrong is sought to be vindicated in each instance.[5] There can be no doubt, under the facts of this case, that at the time that Fleming filed her EEOC charge and received her right-to-sue letter, she could simply have amended her pending discrimination complaint and argued the Title VII allegations in that suit. She chose not to do so, but rather filed a second complaint while her original case was still pending. As we said in Nilsen, when one has a choice of more than one remedy for a given wrong, here the suspension and discharge, he or she may not assert them serially, in successive actions, but must advance all at once on pain of bar. Nilsen, at 561.
 
 
 26
 Res judicata bars all claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication. Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); Nilsen, at 560. Thus Fleming is not only barred from relitigating the original discrimination claims against Travenol, but also is precluded from asserting those claims which she could have brought in that case. The district court correctly granted summary judgment against Mrs. Fleming on the basis of res judicata.
 
 
 27
 For the reasons set forth above, we affirm the district court's action, both in its denial of the class certification and in its grant of summary judgment.
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 There is no indication in this record why the plaintiffs claimed that the state action requirements of the constitutional claims obtained against Travenol, a private employer. Indeed, this is one of the bases for the dismissal of the lawsuit. See infra note 4
 
 
 [2]
 The court, in its memorandum opinion, noted that no allegations had been made on the remaining fourth and fifth amendment claims
 
 
 [3]
 Though not pertinent here, the Falcon Court did suggest that the "across-the-board" approach might be appropriate in certain constricted circumstances:
 If [an employer] used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a). Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decision-making processes.
 Falcon, 72 L.Ed.2d at 751.
 Thus, if a particular practice, such as a test, is used in more than one phase of employment decision-making--hiring, job assignment, promotion, or termination--an across-the-board attack is permissible so long as the scope of the class action is limited to the tainted practice. In the circumstances, a class representative injured by a tainted practice in any of the categories (hiring, job assignment, promotion) should be able to satisfy the commonality and typicality requirements of Rule 23(a) when challenging that practice.
 
 
 [4]
 At issue in Nilsen was whether dismissal of an action for failure to meet Title VII's timely filing requirements constituted an adjudication on the merits. We answered the question affirmatively. Nilsen, at 561-62
 
 
 [5]
 Since Mrs. Fleming and her male co-plaintiff in the original suit, Sutton, were treated identically by Travenol, it is difficult to envision on what basis Fleming could prevail on a sex discrimination charge. Notwithstanding, the stipulated facts in the instant case include that Fleming's suspension and separation from employment were the subject of a previous federal lawsuit and that the earlier lawsuit was dismissed with prejudice on March 11, 1981. We would note that the court's order in the previous suit specifically dismissed the complaint on the merits