550 So.2d 1310 (1989)
Yvonne ELLIS, et al.
v.
GEORGIA-PACIFIC CORPORATION.
No. 88 CA 1764.
Court of Appeal of Louisiana, First Circuit.
October 11, 1989.
Concurring in Part and Dissenting in Part October 18, 1989.
Rehearing Denied November 17, 1989.
*1312 Harold M. Wheelan, III, William N. Hazlaris, Bruce A. Cranner, New Orleans, Robert Urann, Metairie, Thomas B. Calvert, New Orleans, Patrick W. Pendley, Plaquemine and André Guichard, New Orleans, for plaintiffs-appellees.
J. Berry St. John, Jr., Robert E. Holden, New Orleans, James P. Dore, Plaquemine, William Craig Wyman, New Orleans and Richard A. Horder, Georgia-Pacific Law Dept., Atlanta, Ga., for defendants-appellants.
Before EDWARDS, LANIER and FOIL, JJ.
EDWARDS, Judge.
This is an appeal from an order of the Eighteenth Judicial District Court certifying a class action and providing for class notice through electronic and print media.
We affirm.

BACKGROUND
On February 17, 1981, the plaintiffs instituted this action on their behalf and on the behalf of persons living in Jefferson and Orleans Parishes who were similarly harmed. Plaintiffs seek damages, in the amount of $100.00 for each class member, for economic loss, illness, medical expenses, and/or inconvenience which resulted from an unauthorized discharge of phenol by the defendant, Georgia-Pacific, into the Mississippi River over a period of days in February of 1981. The plaintiffs claim the phenol-contaminated water entered the water systems of Orleans and Jefferson Parishes, causing a bad odor and taste in the water and exposing the residents to the phenol. The plaintiffs allege Georgia-Pacific is liable for the damage because of its negligence. They specifically plead the Doctrine of Res Ipsa Loquitur.
After a long delayed process of discovery, a class certification hearing was held on March 14, 1988. In addition to the pleadings and interrogatories, both parties presented briefs and placed in the record depositions of various residents of the two parishes involved. Georgia-Pacific presented testimony by two expert witnesses and introduced into evidence maps and chemical log sheets from the different water treatment plants servicing the two-parish area. Plaintiffs submitted affidavits from representative plaintiffs, experts, and a media consultant, Peter A. Mayer. The Mayer affidavit was submitted to provide information for the judge to consider in choosing a method of notice to the absent plaintiffs. The affidavit attested to the coverage that would be derived from media advertisement. On June 2, 1988, the district court ordered the matter certified as a class action and provided that notice of the pendency of the action be allowed to proceed via the electronic and print media. In response, Georgia-Pacific filed a motion for a new trial or hearing on the terms of class certification. The court ordered plaintiffs to show cause on August 11, 1988, why the court should not grant a new trial.
On August 11, 1988, the court heard further argument on the issue of notice and the problems inherent in certifying such a large class. The motion for a new trial was denied on August 12, 1988. Georgia-Pacific appealed suspensively from the *1313 court order of June 2, 1988.[1]

ASSIGNMENT OF ERROR
In its appeal, the defendant, Georgia-Pacific, asserts that the trial court erred:
1. in certifying the class without supporting evidence;
2. in admitting affidavits as evidence;
3. in certifying a class that did not meet all the prerequisites for a class action; and
4. in ordering notice to the absent class members through media advertisements and by publication.

STANDARD OF REVIEW
The trial court is afforded great discretion in class action certification. Wide latitude must be given the trial court in considerations involving policy matters and requiring an analysis of the facts under guidelines helpful to a determination of the appropriateness of a class action. Terrebonne Bank & Trust Co. v. Lacombe, 510 So.2d 78 (La.App. 1st Cir.1987). Unless the trial court has committed manifest error, we must confirm the order. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

PROCEDURAL REQUIREMENTS FOR CLASS ACTION HEARINGS
Defendant assigns error to certification of the class without sufficient proper evidence and to admission of improper hearsay evidence in the form of affidavits.
A review of Articles 591-597 of the Louisiana Code of Civil Procedure governing class actions and prevailing case law reveals no required procedure for a certification hearing. Stevens v. Board of Trustees, 309 So.2d 144, 152 (La.1975) provided that "[w]hen the right to proceed by class action is contested, the trial court in the exercise of its discretion in applying the guidelines may need some showing in addition to the pleadings." As long as the opposing party is given an opportunity to attack and argue against the class certification, the demands of law are met. Livingston Parish Police Jury v. Illinois Central Gulf R.R., 432 So.2d 1027, 1030 (La. App. 1st Cir.), cert. denied, 437 So.2d 1137 (La.1983).
A review of the record shows the court had sufficient information before it, beyond the pleadings, in the form of briefs, documentary material, testimony introduced by defendants, interrogatories, and depositions, to make an initial determination of the appropriateness of the class action device in this matter.

ADMISSIBILITY OF AFFIDAVITS
Affidavits may be admissible under certain conditions concerning matters collateral to the issues on trial without specific statutory authority. Affidavits may be used in evidence during interlocutory or preliminary proceedings, such as, ex parte proceedings, a temporary restraining order, or a rule to show cause. Affidavits are used when there is a need to expedite the procedure. This is acceptable practice when the opposing party is given the opportunity to refute the affidavit. 2A C.J.S. Affidavits § 57 (1972).
The use of affidavits as a basis for decision is allowed in Louisiana under Code of Civil Procedure articles 966(B) and 967 for summary judgments.[2] No similar article is available in the Code of Civil Procedure for *1314 class actions. However, the use of affidavits to support motions for class actions is recognized in the federal system. United National Records, Inc. v. MCA, Inc., 99 F.R.D. 178 (N.D.Ill.1983). See also Fleming v. Travenol Laboratories, Inc., 707 F.2d 829 (5th Cir.1983); 2 Newberg, On Class Actions § 7.26 (2nd ed. 1985).
Defendant specifically assigns error to the Mayer affidavit. The affidavit was submitted by plaintiff to provide information. The defendant had the opportunity at the August 11th hearing to refute the attestations or provide contradictory information.
The two cases cited by defendant precluding use of affidavits as inadmissible hearsay are inapposite. Neither concerned a class certification hearing. In Julius Cohen Jeweler, Inc. v. Succession of Jumonville, 506 So.2d 535 (La.App. 1st Cir.), cert. denied, 511 So.2d 1155 (La.1987), the affidavit was used to prove a fact at issue in the trial. In Board of Commissioners v. Louisiana Commission on Ethics, 416 So.2d 231 (La.App. 1st Cir.), cert. denied, 421 So.2d 248 (La.1982), the affidavit was submitted for use at the trial of a dilatory and a peremptory exception. The Court of Appeal affirmed the trial court's refusal to allow the affidavit. The appellant court relied on Louisiana Code of Civil Procedure Articles 930 and 931, which allow evidence to be introduced at the trial of the exceptions. The word "evidence" was interpreted to mean competent legal evidence that would be admissible at trial on the issues. Board of Commissioners, 416 So.2d at 238.
We have no similar statutory guidance before us. However, the Louisiana articles on class actions are based on Federal Rule of Civil Procedure 23. Without guidance from Louisiana sources, treatises and federal cases can be useful. The Newberg treatise and the federal cases cited above provide support for the use of affidavits in class certification hearings.
The power to provide for notice and collateral matters is exercised by the court. Williams v. State, 350 So.2d 131, 138 (La. 1977). We find that it was within the discretion of the trial judge to allow the affidavits at a class certification hearing.

PREREQUISITES FOR CLASS ACTIONS
Articles 591 and 592 of the Louisiana Code of Civil Procedure set forth the criteria for a class action. The requirements are:
1. A class so numerous that joinder is impractical;
2. The joinder of parties who are members of the class and able to provide adequate representation for absent members; and
3. A "common character" between the rights of the representatives of the class and the absent class members. Williams v. State, 350 So.2d 131, 133 (La.1977); Stevens v. Board of Trustees, 309 So.2d 144, 148 (La.1975); Livingston Parish Police Jury v. Illinois Central Gulf R.R., 432 So.2d 1027, 1029 (La.App. 1st Cir.), cert. denied, 437 So.2d 1137 (La.1983).
The defendant does not contest the first requirement of impractical joinder. The attack is made on the lack of adequate representation because of atypical claims and the lack of a "common character" between the issues of the representative plaintiffs and the other members of the class.

ADEQUATE REPRESENTATION
The determination of whether the plaintiffs here are situated so that they may fairly insure adequate representation is made by the court. McClure v. A. Wilbert's Sons Lumber & Shingle Co., 232 So.2d 879, 883 (La.App. 1st Cir.1970); Verdin v. Thomas, 191 So.2d 646, 650 (La.App. 1st Cir.1966).
Depositions submitted to the court at the certification hearing show that the claims of the named plaintiffs can be generally grouped as follows: (1) medical expenses, *1315 (2) economic damage, and (3) inconvenience. The medical expenses are claimed for problems related to the exposure to the phenol. The great majority of the plaintiffs claim economic loss that resulted from the need to buy bottled water or other types of bottled liquids. The plaintiffs were inconvenienced by their inability to use tap water and the need to purchase alternative supplies of water. A reading of the pleadings, briefs, and the depositions of other residents of Orleans and Jefferson Parishes at the time of the discharge does not suggest that these claims are atypical. Instead, the claims emerge as a cross-section of the types of claims asserted throughout the record.
The representative plaintiffs were residents of the two parishes when the phenol spill occurred and are similarly situated to the absent members of the class. The court had facts before it sufficient to make a determination that the named plaintiffs would fairly insure the adequate representation of the absent class members.

COMMON CHARACTER
The criteria for a class action provided by the Code of Civil Procedure Articles 591 and 592 was clarified by the Louisiana Supreme Court in Stevens v. Board of Trustees, 309 So.2d 144 (La.1975), and later refined by State ex rel. Guste v. General Motors Corp., 370 So.2d 477 (La. 1978), and Williams v. State, 350 So.2d 131 (La.1977). The most recent enunciation of the analysis to be used, with particular focus on the aspect of "common character," was made in McCastle v. Rollins Environmental Services, 456 So.2d 612 (La. 1984).
The phrase "common character" encompasses more than the simple existence of questions of law and fact common to the class. "The requirement of a `common character' restricts the class action to those cases in which it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." McCastle, 456 So.2d at 616 (citation omitted). See also Terrebonne Bank & Trust Co. v. Lacombe, 510 So.2d 78, 81 (La.App. 1st Cir.1987).
A review of the record and briefs in this case, using the analysis set forth by McCastle, indicates that a "common character" exists. A mass tort situation is particularly susceptible to inconsistent determinations. The plaintiffs have common rights to assert. The common issues of liability predominate over the individual issues of damages and any individual defenses asserted by defendant to various subclasses of the plaintiffs. The claim that other concerns dumped phenol and that different water treatment plants may have aggravated the problem are common defenses asserted by Georgia-Pacific, not defenses against individual plaintiffs. It would be more efficient and economical to hear the common issues in one trial. Uniformity of decision would obviously result in a class action, and the use of the class action affords the court the opportunity to respond to plaintiffs' claims while being aware of the consequences to the defendant.
"When a `common character' of rights exists, a class action is superior to other available adjudicatory methods for the purpose of promoting the basic aims and goals of a procedural device: (1) effectuating substantive law; (2) judicial efficiency; and (3) individual fairness." McCastle, 456 So.2d at 616, citing State ex rel. Guste v. General Motors Corp., 370 So.2d 477, 488 (La.1978); Williams v. State, 350 So.2d 131, 133-134 (La.1977); Stevens v. Board of Trustees, 309 So.2d 144, 151 (La.1975).
The essence of defendant's complaints is the lack of a common character, a predominance of individual issues, and an unmanageable class. These areas of concern are among the factors listed in Federal Rule *1316 23(b)[3] to be considered by the courts in determining whether the goals of the device are met and, therefore, whether a class action should be maintained. McCastle, 456 So.2d at 617 and n. 1; Williams, 350 So.2d at 134-36; Stevens, 309 So.2d at 148-51.
"[I]f the superiority of a class action is disputed, the trial court must inquire into the aspects of the case and decide whether the intertwined goals of effectuating substantive law, judicial efficiency, and individual fairness would be better served by some other procedural device." McCastle, 456 So.2d at 617.

EFFECTUATING SUBSTANTIVE LAW
In the suit, all damage is claimed to have resulted from the negligence of the defendant in causing the unauthorized discharge of phenol into the source of water for the two parishes in February, 1981. The legislative policy underlying a claim of negligence is to protect, in a fair manner, a party from the harm caused by another.
One important aspect of implementing substantive law is to enable plaintiffs to bring actions and courts to enforce policies underlying the law. McCastle, 456 So.2d at 618, quoting Developments in the LawClass Actions, 89 Harv.L.Rev. 1318, 1353 (1976). Without a procedural device, such as a class action, a large group of litigants, estimated here to be one million plaintiffs, with predominately small claims would not be able to pursue effectively an action of the type before us. McCastle, 456 So.2d at 619; Millet v. Rollins Envtl. Servs., 428 So.2d 1075, 1077 (La.App. 1st Cir.), cert. denied, 433 So.2d 153 (La.1983).
"[C]lass action procedures assist courts in judging precisely what outcomes of litigation would best serve the policies underlying causes of action." McCastle, 456 So.2d at 618, quoting Developments in the LawClass Actions, 89 Harv.L.Rev. 1318, 1353 (1976). However, the court must also guard against a distortion in effectuating the substantive law or an unfair result caused by the inappropriate maintenance of a class action. A class action not properly defined or delineated would impede rather than implement the law. McCastle, 456 So.2d at 619.
The court in a class action has the ability to see the overall importance of plaintiffs' moderate claims and the possible consequences to Georgia-Pacific.

JUDICIAL EFFICIENCY
The second inquiry focuses on judicial efficiency. "A fundamental objective of *1317 the class action device is the achievement of economies of time, effort, and expense." McCastle, 456 So.2d at 619 (citation omitted).
The defendant claims that no common character exists in the suit. Defendant points to a need to cross-examine each plaintiff in order to assess individual types of damage. Defendant argues that individual questions exist as to each plaintiff concerning whether the contaminated water actually reached him and whether each plaintiff used the water. The defendant also highlights the problems of locating, identifying, and managing such a large amorphous class. A class action under these circumstances, as related by defendant, could impede an efficient, economic trial.
We feel the defendant's concerns are not well founded and not sufficient, under the facts, to defeat the initial finding by the trial court that the class should be certified.
There is more here than just common questions of fact and law. The plaintiffs all have a common interest in pursuing and advancing the suit. The most important issues of liability are common to all the plaintiffs who were residents of the two parishes and harmed as a result of the phenol discharge. The common issues are:
1. whether the phenol discharged by Georgia-Pacific did enter the water systems;
2. whether the phenol content of the water was of sufficient concentration to cause an odor and taste problem;
3. whether Georgia-Pacific had a legal duty to warn plaintiffs of the discharge;
4. whether Georgia-Pacific had a legal duty to anticipate such a risk and provide precautions against a need for a discharge; and
5. whether punitive damages against Georgia-Pacific for the discharge should be assessed under the facts and applicable law.
The facts here are analogous to the facts present in McCastle and Millet. The suit concerns an environmental hazard which allegedly harmed and caused inconvenience to the residents. McCastle, 456 So.2d at 615; Millet, 428 So.2d at 1075-76. The individual issues delineated by defendant rest primarily on differences in the proof of damages. Again, the differences in McCastle and Millet parallel the differences in the case before us. McCastle, 456 So.2d at 620; Millet, 428 So.2d at 1078. In McCastle, the court stated that the fact "[t]hat individuals may have been injured or unreasonably inconvenienced ... on varying dates by defendant's ... operations does not constitute a material variation in the elements of the class members' claims. With respect to the question of damages, individual questions of quantum do not preclude a class action when predominant liability issues are common to the class." McCastle, 456 So.2d at 620 (citation omitted). Here, as in Millet, the issues of defendant's duty and possible liability predominate over any individual issues previously raised by defendant. Millet, 428 So.2d at 1078.
To have a manageable class, it is not necessary that all members be identified before certification if the class can be reasonably defined. McCastle, 456 So.2d at 620. The court must do a careful analysis and not be swayed merely by numbers. The problems of a large class are the very reasons joinder becomes impossible. "Although difficulty may be encountered in managing this litigation, it does not outweigh the economies to be derived from unitary adjudication." McCastle, 456 So.2d at 620.
Article 593.1[4] of the Code of Civil Procedure allows the court to respond to the problems of management. It is *1318 within the discretion of the trial court to devise and adopt a management plan. Problems that arise in a large class can be alleviated with a good plan. If the court determines at any time that the problems outweigh the advantages of the class action, or that the suit does lack the prerequisites for a class action, and that another procedural device might be superior, the class can be modified or certification recalled. Because of this ability of the court to review constantly its certification, if an error is to be made "it should be in favor and not against the maintenance of the class...." McCastle, 456 So.2d at 620.

FAIRNESS TO PARTIES
The last consideration is whether the decision in the class action would be fair to the parties. The court must guard against inconsistent holdings to similarly placed persons without sacrificing overall fairness. McCastle, 456 So.2d at 621.
The plaintiffs' claims are based on a recognition of a large number of common issues. The record discloses no pending separate suits by individual plaintiffs. The possible individual claims for recompense are not so great as to compel several plaintiffs to prosecute in separate suits. Because inconsistent decisions, under these facts, by different courts would result in grave injustice, a class action appears to be the best procedural device to promote fairness.
An analysis of the record before this court under the guidelines of McCastle provides a reasonable basis for the finding of the trial court. We cannot say the trial court committed manifest error in its decision to certify the class.

NOTICE
The class action articles in the Code of Civil Procedure are silent on the issue of notice. The court is guided in its decision on notice by the Louisiana jurisprudence and federal and state due process requirements. Williams v. State, 350 So.2d 131, 137-38 (La.1977). When notice is necessary, due process requires that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Williams, 350 So.2d at 138, *1319 quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). It is important that plaintiffs be given the option to retire from the class action. Williams, 350 So.2d at 137. Under Code of Civil Procedure article 597, a judgment rendered on the merits "concludes all members of the class...." Notice at an early stage of the proceedings is preferable. Williams, 350 So.2d at 137.
The court in Williams noted that for large individual claims, the court may require that individual written notice be given to identifiable members of the class. Williams, 350 So.2d at 138. However, notice by publication was deemed sufficient if it would reasonably apprise those interested in the action. Williams, 350 So.2d at 138. "In determining the manner and form of the notice to be given, the court shall consider the interests of the class, the relief requested, the cost of notifying the members of the class, and the possible prejudice to members who do not receive notice." Williams, 350 So.2d at 139, n. 12, quoting Section 7(c), Uniform Class Actions Act.
The defendant asserts the claims are of a magnitude that require individual notice. However, the magnitude perceived by the defendant appears to be from a consideration of the total award in relation to the cost to the defendant. The record provides no showing that the individual claims are so large as to require individual notice.
Both sides had the opportunity to argue for and against media notice with consideration given to the cost of different types of notice, the ability of the notice to reach the class members, and the problems of locating and identifying class members seven to eight years after the incident. The trial judge at the August 11th hearing agreed that both parties should be consulted concerning the form of the advertisements. The court had sufficient information before it to make a decision on a method of notice "reasonably calculated" to reach the class members.
At this time we cannot say the trial court's order for notice by publication and through television and radio advertisements to absent members at the onset of the action, thereby providing an opportunity to opt out of the action, was manifestly erroneous.
For the foregoing reasons, the decision of the trial judge certifying the class and allowing for notice to the members is affirmed at the appellant's cost, and the case is remanded to the trial court for proceedings consistent with this ruling.
AFFIRMED.
LANIER, J., concurs in part and dissents in part and assigns reasons.
LANIER, Judge, concurring in part and dissenting in part.
I agree with affirming the judgment certifying the class action. I do not agree that an affidavit (which is hearsay) is admissible over objection as competent evidence in an evidentiary hearing to certify a class action. Because the only evidence submitted by the plaintiffs on the method of notification issue was the affidavit of Peter A. Mayer, the erroneous consideration of this evidence interdicted the trial court judgment providing for media notice, and that issue should be remanded to the trial court for relitigation. I do not agree with the majority's treatment of the proper standard for appellate review of a class action judgment.
ADMISSIBILITY OF AFFIDAVITS AS COMPETENT EVIDENCE IN A CLASS ACTION EVIDENTIARY HEARING
Several affidavits were introduced into evidence by the appellees over objection by the appellant at the evidentiary hearing on the motion to certify the class. In brief, the appellant asserts prejudicial error in allowing the introduction of the Peter A. Mayer affidavit, a copy of which is attached hereto as Appendix A. This affidavit *1320 was apparently the factual basis for the trial court ruling on the issue of what type of notice should be given to the class members.
The majority states that it is "[w]ithout guidance from Louisiana sources", and relies on two federal cases, a treatise and Corpus Juris Secundum for the legal propositions that (1) "[A]ffidavits may be admissible under certain conditions concerning matters collateral to the issues on trial without specific statutory authority" and (2) that "[A]ffidavits may be used in evidence during interlocutory or preliminary proceedings, such as, ex parte proceedings, a temporary restraining order, or a rule to show cause." (Emphasis added).

Guidance in Louisiana Law
I do not agree that there is a lack of Louisiana law to guide the majority on this issue. At all times pertinent hereto[1], hearsay was generally defined in Louisiana as an out of court statement (assertion) offered as evidence in court to prove the truth of the matter contained in the statement. State v. Martin, 356 So.2d 1370 (La.1978); G. Pugh, Louisiana Evidence Law, Chapter 6The Hearsay Rule and its Exceptions, 387-527 (1974). Cf. La.C.E. art. 801(C).[2] The evidentiary rule concerning the admissibility of hearsay is one of exclusion; that is, hearsay is not admissible in evidence unless (1) covered by an exception to the rule or (2) specifically authorized by statute. The Louisiana law applicable in this case is set forth in the comments for La.C.E. art. 802 as follows:

Comments
(a) The provision is based on Federal Rule of Evidence 802, and does not substantially change Louisiana law. See former R.S. 15:434; G. Pugh, Louisiana Evidence Law 387-527 (1974); Comment, "The Hearsay Rule: The Law of Evidence's Swiss Cheese," 21 Loy.L.Rev. 279 (1975); Comment, "Hearsay and Non-Hearsay as Reflected in Louisiana Criminal Cases," 14 La.L.Rev. 611 (1954).
(b) Although former R.S. 15:434 provided that "[h]earsay evidence is inadmissible, except as otherwise provided in this Code," there were few Louisiana statutes that in fact provided for hearsay exceptions, and the exceptions were therefore found primarily in judicial decisions. In State v. Smith, 285 So.2d 240, 244 (La.1973), however, the Louisiana Supreme Court made clear that above and beyond prior case holdings and specific statutes, Louisiana generally followed the "traditional hearsay exceptions." See also State v. Scramuzza, 408 So.2d 1316 (La.1982). This Article closes the door to continuing judicial creation of new hearsay exceptions, except for those ad hoc exceptions that may be made under Article 804(B)(6) of this Chapter.
(c) A variety of statutes create special narrow hearsay exceptions in Louisiana. The terms of this Article do not affect those statutes. Because of their limited applicability no attempt has been made to incorporate them into this Code. See, e.g., C.C.P. Arts. 1450 (depositions), 1702(D) (proof in confirmation of default), 1978 (former testimony in new trial), 2892 (probate testimony); C.Cr.P. Arts. 295 (preliminary hearing transcripts), 105, 647 (coroner's reports and reports of sanity commissions); R.S. 15:440.3 (child abuse video-tapes); R.S. 15:436.1 (photographs of objects of theft); R.S. 34:876 (shipping articles); R.S. 3:740 (certified copies of recordations, renewals, and transfers of livestock *1321 brands); R.S. 10:3-510 (evidence of dishonor and notice of dishonor); R.S. 26:104 (evidence of acquittal at permit revocation hearing); R.S. 10:1-205 (course of dealing with usage of trade). (Emphasis added)
The Louisiana Supreme Court, this Court on two occasions, and the Courts of Appeal for the Second, Fourth and Fifth Circuits have ruled that affidavits are hearsay. Miller v. Miller, 226 La. 273, 76 So.2d 3 (1954); Boneno v. Lasseigne, 514 So.2d 276 (La.App. 5th Cir.1987); Julius Cohen Jeweler, Inc. v. Succession of Jumonville, 506 So.2d 535 (La.App. 1st Cir.), writ denied, 511 So.2d 1155 (La.1987); Kennair v. City of New Orleans, 488 So.2d 1189 (La.App. 4th Cir.1986); Board of Commissioners of Port of New Orleans v. Louisiana Commission on Ethics for Public Employees, 416 So.2d 231 (La.App. 1st Cir.), writ denied, 421 So.2d 248 (La.1982); Frazier v. Green Steel Building, Inc., 409 So.2d 1290 (La.App. 2nd Cir.1982). In E. Cleary, McCormick's Handbook of the Law of Evidence, § 251, at 601 (2d ed. 1972) it is observed that "[A]ffidavits, though under oath, are not exempted from the hearsay rule." In D. Binder, Hearsay Handbook, § 39.01, at 432 (2d ed. 1983) appears the following:
It would be easier to obtain an affidavit from the custodian and introduce it in evidence. But, lacking an exception to the hearsay rule, this won't work. An affidavit is written hearsay under oath. It is just as excludable as oral hearsay not under oath.
After reviewing all of the above cited authorities, it is apparent that there is "guidance from Louisiana sources" on this issue.
To apply the above Louisiana law, on the admissibility of affidavits (as hearsay) into evidence, we must determine (1) whether an affidavit is a recognized exception to the hearsay rule, and/or (2) whether the use of an affidavit is specifically authorized by statute in a class action. The above cited authorities do not recognize an affidavit as an exception to the hearsay rule of exclusion. Cf. La.C.E. art. 803. Louisiana jurisprudence holds that an affidavit "is hearsay and is not competent evidence unless its use is specifically authorized by statute." Board of Commissioners of Port of New Orleans, 416 So.2d at 238. The ruling of the majority herein is contrary to, and in direct conflict with, this jurisprudence.
A review of La.C.C.P. arts. 591-597 pertaining to class actions reveals that they do not authorize the use of affidavits. This must be contrasted with other provisions of the Code of Civil Procedure which do authorize the use of affidavits, such as articles 966 (summary judgment), 1702 (confirmation of default) and 3609 (preliminary injunction). It is a well established rule of statutory construction that laws on the same subject matter (such as the Code of Civil Procedure) must be interpreted in reference to each other. La.C.C. art. 13; Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir.1984). The legislature specifically provided for the use of affidavits in some procedures contained in the Code of Civil Procedure; the legislature did not provide for the use of affidavits in class actions (and many other procedures). The obvious implication of this is that the legislature did not intend that affidavits would be used in class actions. The holding of the majority to the contrary does violence to the intent of the legislature, and opens the door for the use of affidavits in civil procedures when there is no statutory authority for it.
Because there is a substantial amount of Louisiana law pertaining to this issue, it is unnecessary to look to collateral sources for guidance.

The Authorities Which Guided the Majority
The majority cites Fleming v. Travenol Laboratories, Inc., 707 F.2d 829 (5th Cir. 1983) and United National Records, Inc. v. MCA, Inc., 99 F.R.D. 178 (N.D.Ill.1983) as authority for their holding. A review of these decisions shows that neither holds that affidavits are admissible over a hearsay *1322 objection at an evidentiary hearing to certify a class action.
In Fleming, the plaintiff filed a sex discrimination class action case. The plaintiff's motion for class certification "failed to include any factual allegations on which the trial judge could evaluate these factors. Fleming furnished no affidavits or other evidence to support her certification attempt." Fleming, 707 F.2d at 831. The federal district court "declined to certify the class after finding that the plaintiff failed to develop sufficient evidence to demonstrate that the Rule 23 requirements had been met." Fleming, 707 F.2d at 831. The appeals court affirmed, noting that "[F]aced with a complete lack of data, evidence, memoranda or anything other than the allegations of Fleming's complaint, the district court correctly denied certification of Fleming's proposed class." Fleming, 707 F.2d at 833.
In United National Records, the plaintiffs brought a class action asserting price fixing in violation of the Sherman Act. In granting the class certification, the district court observed that "[I]n determining whether the prerequisites of Rule 23 are met, however, the court may look behind the pleadings and consider affidavits and other documents before it makes a class determination." United National Records, 99 F.R.D. at 180. Footnotes 1 and 2 on page 179 of the opinion indicate that affidavits were presented to the court. The opinion does not reflect if these affidavits were used by consent or if they were admitted into evidence over a hearsay objection.
The majority cites 2A C.J.S. Affidavits § 57, 501-502 (1972) as authority for its holding. This collateral source provides as follows:
§ 57. As to Collateral Matters and Proceedings
Affidavits are received in preliminary, collateral, and interlocutory matters and proceedings subject to general rules of evidence.

. . . . .
Generally, affidavits may be received in evidence under proper circumstances as to matters collateral to issues on trial, with or without statutory authorization, as in the case of interlocutory or preliminary matters. Accordingly, it may be proper to use affidavits as evidence in ex parte proceedings, such as in ruling on applications pendente lite; and they may be so used in matters of practice, where orders in the progress of actions are applied for, in finding facts as a basis for issuing temporary restraining orders, or as a foundation of a rule to show cause. In all of these situations there is a compelling need for expeditious procedure and in most of them in the normal course of litigation an opportunity is subsequently afforded the opposing party to refute the affidavits or to cross-examine the affiants.
However, in such cases affidavits are not to be received as undisputed evidence of the facts necessary for the foundation of a final order or judgment unless there is no opposition. Moreover, upon the issuance of the court's order, the affidavit loses its force and cannot be received as evidence upon the substantive issues of fact, as these should be tried by oral testimony or by deposition, but such affidavit may be received as evidence of the fact that it was made.
(research notes, library references and footnotes omitted; emphasis added)
The majority did not cite 2A C.J.S. §§ 56, 58 and 60 which provide, in pertinent part, as follows:
§ 56. In General
Affidavits may be received in evidence in certain limited situations in which the weakness of this type of evidence is deemed substantially outweighed by the necessity for expeditious procedure; but affidavits of witnesses who are available for trial are not admissible.
. . . . .
Generally, affidavits are regarded as the least satisfactory mode of presenting *1323 testimony and a party cannot be compelled to try his case on affidavits. Indeed, as discussed in C.J.S. Evidence § 1032, ex parte affidavits are commonly considered as weak evidence, to be received with caution, and not to be used where better evidence is obtainable.
However, the use of affidavits has been considered proper in certain limited situations in which the weakness of this type of evidence is deemed substantially outweighed by the necessity for expeditious procedure.
§ 58. As to Facts Material to Issue
The general rule is, that in the absence of an authorizing statute or rule of court, affidavits cannot be read or considered to prove material issues of fact, except where the objection is waived, or in purely administrative proceedings.
. . . . .

Presentation of materially disputed facts by affidavit is improper, and unless permitted by statute, as discussed infra § 59, affidavits may not be used as primary independent, or corroborative evidence, when substantial rights are affected, at least where no explanation is given as to why the affiant is not produced as a witness. Stated differently, ex parte affidavits are inadmissible in a judicial trial in a court of law, where evidence is finally adjudicated and final judgments are rendered. Accordingly, in the absence of an authorizing statute or rule of court, ex parte affidavits may not be read in evidence in the determination of material issues of fact, although they are part of the files in the case; and material issuable facts may not be determined on the basis of ex parte affidavits. Also, credibility of a witness or party may not be determined on affidavits.

Affidavits on material facts are inadmissible because they are hearsay, and deny the privilege of cross-examination; and an ex parte affidavit made without opportunity for cross-examination rarely, if ever, is admissible to prove the facts therein recited. Thus matters material to the issues are to be proved or controverted by the testimony of competent witnesses taken at the trial or by deposition, so as to permit cross-examination; and where an affidavit is admitted with respect to a material allegation without allowing an opportunity to cross-examine the affiant, the admission of such an affidavit into evidence constitutes substantial error and renders further proceedings nugatory. The fact, however, that cross-examination is permitted does not render the affidavit admissible where the cross-examination does not touch on the contents of the affidavit.
§ 60. Applicability of General Rules of Evidence
Affidavits offered in evidence are subject to the same rules of evidence as govern testimony generally.
. . . . .

Affidavits offered in evidence ordinarily are governed by the rules of evidence applicable to parol testimony generally. Under such general rules of evidence an affidavit may be subject to the objection of being incompetent, irrelevant, and immaterial to the issues of the cause, or of being a mere conclusion of affiant, as not being positive and direct statements of matters of fact, as being hearsay, or of being the testimony of one who is incompetent as a witness. Also, an affidavit may be subject to objection as not being the best evidence, particularly where it does not appear that affiant is unavailable to testify, or as violating constitutional privilege; and the court will not consider self-serving declarations contained in an affidavit.
(research notes, library references and footnotes omitted; emphasis added)
The majority relies on 2 Newberg, On Class Actions, § 7.26 at 50-53 (2d ed. 1985) as authority that an affidavit is admissible over a hearsay objection at an evidentiary *1324 hearing to certify a class action. This collateral source provides, in pertinent part, as follows:
§ 7.26 Procedures for Class Ruling
Various procedures are utilized for initial class determinations. The burden of proving class facts varies somewhat as the procedure for initial class rulings changes.
Burden Where Ruling on Pleadings
Once the plaintiff has alleged class facts sufficient to meet notice pleading standards, a prima facie showing to invoke the class device is made. For a class ruling based on pleadings and briefs only, argument on legal conclusions and presumptions from class facts which are undisputed in the usual case is involved, and burden of proof concepts are not of significance beyond the prima facie showing of such class facts.
Burden Where Ruling on Affidavits
Where opposing affidavits, as in the usual case, do not directly dispute class facts alleged in the complaint but rather introduce additional facts which tend to diminish the weight of such class facts, e.g., the presence of individual questions, then the class ruling is based on the application of judicial discretion of undisputed facts in support and mitigation of a class action, and burden of proof concepts are not of significance beyond the prima facie showing of such class facts. Where the party opposing the class, however, submits factual affidavits which dispute the class facts alleged in pleadings of the class representative, the burden may be shifted back to the class representative to file counter-affidavits, if appropriate, in order to overcome the general rule that facts in an undisputed affidavit must be taken as true, unless rebutted, for purposes of rulings on preliminary motions.
Facts in an affidavit submitted in opposition to class facts as alleged by the class representative must themselves be believable opposition facts in order to overcome a prima facie showing that class certification is otherwise appropriate.
If the party opposing the class raises new facts in an affidavit which dispute class facts alleged by the class representative, the class representative should be entitled to have the class ruling deferred pending discovery, especially where such new facts are in the exclusive possession of the party opposing the class.
Burden Where Ruling After Evidentiary Hearing
Class facts may be developed or rebutted during the course of a collateral evidentiary hearing, such as a hearing on a preliminary or permanent injunction which precedes the class ruling, or during a special evidentiary hearing to determine class facts. Oral testimony at any evidentiary hearing prior to the class ruling which disputes class facts alleged in the complaint will require counter oral testimony or other evidence to rebut the new facts.
(Footnotes omitted; emphasis added)
Thus, according to 2 Newberg, there are three basic procedures which can be used to make an initial class certification: (1) a ruling on the pleadings; (2) a ruling on affidavits; and (3) a ruling after an evidentiary hearing. Whichever procedure is used, "the class proponent, usually the plaintiff, has the initial burden of demonstrating satisfaction of the Rule 23 requirements." 2 Newberg, supra, § 7.26 at 53.
In the instant case the trial judge ordered an evidentiary hearing to determine class certification; he did not order a hearing on the pleadings or a hearing on affidavits. Oral testimony and depositions were presented at the hearing. There was no objection to this type of evidence. The appellant objected to the use of affidavits at the evidentiary hearing. This objection was well-founded because an affidavit is not competent evidence at an evidentiary hearing when a hearsay objection is raised in Louisiana.
In my opinion, the collateral authorities cited by the majority do not support the majority's holding.

*1325 Conclusion on Admissibility of Affidavits Issue

The trial court committed error by admitting the affidavits into evidence at the evidentiary hearing. The Mayer affidavit was the only evidence presented by the appellees concerning notification by the media. Thus, the trial court ruling on method of notice, which is based on this affidavit, has been interdicted. Without the Mayer affidavit, there is no competent evidence in the record concerning media notification. In this procedural posture, the interests of justice require a remand so the trial court can receive competent evidence on this issue and rule on it. La.C.C.P. art. 2164. Cf. Myers v. Myers, 532 So.2d 490 (La.App. 1st Cir.1988).

STANDARD OF REVIEW
I agree with the majority that a trial court is afforded much discretion in deciding whether or not to certify a class action. La.C.C.P. art. 593.1(A) and (B) provide as follows:
A. After commencement of an action by or on behalf of parties alleged to be members of a class, the court, on its own motion, or on the motion of any party or on trial of any exception directed to such issue, shall determine whether the action may be properly maintained as a class action as a prerequisite to any further proceedings therein. If the court finds that the action should be maintained as a class action, it shall certify the action accordingly; otherwise the action shall be dismissed. The court may permit amendment of the pleadings in the action to permit maintenance thereof as an ordinary proceeding on behalf of parties expressly named therein.
B. In the process of class certification or at any time thereafter before decision on the merits, the court may alter, amend or recall its certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action.
When used in a statute, the word "may" is permissive. La.R.S. 1:3; La.C.C.P. art. 5053; La.C.Cr.P. art. 5; La.C.J.P. art. 4; Citizens Bank & Trust Company v. Little Ford, Inc., 522 So.2d 1124 (La.App. 1st Cir.1988). In the context of La.C.C.P. art. 593.1, the word "may" denotes discretion. Cf. Johnson v. Southern University, 551 So.2d 1348 (La.App. 1st Cir.1989); Morial v. Guste, 365 So.2d 289 (La.App. 4th Cir.), writs denied, 365 So.2d 1375 (La.1978); State in the Interest of Elliott, 206 So.2d 802 (La.App. 2nd Cir.1968). Thus, in Williams v. State, 350 So.2d 131, 133 (La.1977) the court observed as follows:
When (as here) the first two requirements are met, the trial court's inquiry (in its determination of whether to exercise its discretion to allow or disallow the class action remedy sought) centers upon whether "the character of the right sought to be enforced ... is ... common to all members of the class". La.C. Civ.P. art. 591(1).
See also Stevens v. Board of Trustees of Police Pension Fund of City of Shreveport, 309 So.2d 144 (La.1975). A class action judgment involving discretion is reviewed on appeal by the abuse of discretion standard. Brown v. New Orleans Public Service, Inc., 506 So.2d 621 (La. App. 4th Cir.), writ denied, 508 So.2d 67 (La.1987); Bergeron v. Avco Financial Services of N.O., 468 So.2d 1250 (La.App. 4th Cir.), writ denied, 474 So.2d 1308 (La. 1985); 2 Newberg, supra, § 7.46 at 83-84.
However, after observing that a trial court is afforded great discretion in certifying a class action, the majority then states that "[U]nless the trial court has committed manifest error, we must confirm the order," citing Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The implication of this language is that the trial court's discretionary judgment in certifying a class action is reviewed by the manifest *1326 error (clearly wrong) standard (which applies to the appellate review of facts). I do not agree that the manifest error (clearly wrong) standard of appellate review applies to judgments based on discretion. The manifest error standard only applies to factual findings. The analytical process in this case is analogous to that of a damage award in torts. Whether or not a tort victim has pain and suffering, and, if so, the extent and duration of that pain and suffering, are questions of fact. These facts are reviewed on appeal by the manifest error standard. The amount of a damage award based on these facts is a question involving the trial court's discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). When the trial court exercises that discretion and fixes an award, the award will be reviewed on appeal by the abuse of discretion standard. Reck, 373 So.2d at 501. Similarly, the factual findings upon which a class action certification is based should be reviewed on appeal by the manifest error (clearly wrong) standard. After the trial court makes its determinations of fact, it exercises its discretion to certify the class or not. This discretionary judgment must be reviewed on appeal by the abuse of discretion standard.
To the extent that these views conflict with those of the majority on this issue, I dissent.
After reviewing the pertinent (and admissible) evidence, I conclude that the trial court did not abuse its discretion in certifying this case as a class action.[3]

APPENDIX "A"

AFFIDAVIT
STATE OF LOUISIANA
PARISH OF ORLEANS
BEFORE ME, the undersigned authority, personally came and appeared: PETER A. MAYER who, after being duly sworn, did depose and say:
That he is the founder and president of Peter A. Mayer Advertising, Inc., a $9.7 million, full-service agency, with a staff experienced in all areas of advertising, marketing, promotion, direct response and public relations. That the agency uses comprehensive, in-house capabilities in media planning and placement, concept, copy, art, mechanical and broadcast production, and public relations, and has attracted local, regional and national accounts.
That he, Peter A. Mayer, has been an active member of the Louisiana advertising community for more than thirty-four (34) years. In 1982, he was awarded the American Advertising Federation's Silver Medal for outstanding contributions to advertising and furthering industry standards. He was also the first president of the Louisiana Association of Advertising Agencies. In 1986, Peter A. Mayer Advertising, Inc., was selected Agency of the Year by the Advertising Club of New Orleans.
That he is aware of the pending Georgia Pacific class action litigation and the necessity of providing notice to the class members. He is also aware that the market which must be reached is the adult population of Orleans Parish and Jefferson Parish. He has considered the objective of notifying the residents of these parishes with a public service announcement through the media and has determined that this objective can be achieved.
That he is capable of purchasing media time and saturating the above-identified market over a two-week period with messages utilizing a combination of newspaper, television and radio exposure. His proposed schedule would include three-column advertisements in the Thursday and Sunday newspapers in conjunction with television and radio ads at specifically time intervals.
That the proposed schedule is estimated to reach 4,636,205 persons in the targeted *1327 market. Although this figure reflects duplication of individuals, it is estimated through the demographic research that such proposal would reach 95% of the adult residents of Orleans Parish and Jefferson Parish.
That the cost of this proposal for media notice is $19,977.40, with the understanding that the figure is a reasonably calculated estimate.
That the above is true and correct to the best of his knowledge and belief.
 (s) Peter A. Mayer
 AFFIANT: PETER A. MAYER
WITNESSES:
(s) [Signature]
(s) [Signature]

SWORN TO AND SUBSCRIBED BEFORE ME,

THIS 8th DAY OF February, 1988

(s) [Signature]
NOTES
[1] In addition to appealing the district court's order of June 2, 1988, Georgia-Pacific applied to this court for supervisory writs. Plaintiffs filed a motion to dismiss both the appeal and the writ application as untimely. On November 2, 1988, this court denied the writ and noted that the defendant's proper remedy would be by appeal. By memorandum ruling of the same date, numbered CM 88 1444, this court denied the plaintiffs' motion to dismiss. The plaintiff then applied for supervisory writs to the Louisiana Supreme Court on the issue of untimeliness. The writ was denied in Ellis v. Georgia-Pacific, Inc., 536 So.2d 1217 (La.1989) on January 13, 1989.
[2] The use of affidavits is also authorized by LSA-C.C.P. art. 1702, covering confirmation of default judgments, and article 3609, covering preliminary injunctions.
[3] Federal Rule of Civil Procedure 23(b) provides:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in their particular forum; (D) the difficulties likely to be encountered in the management of a class action. Similar facts are listed in the Uniform Class Actions Act, Section 3(a) (National Conference of Commissioners on Uniform State Laws (1976)) cited in McCastle, 456 So.2d at 617 n. 2.
[4] LSA-C.C.P. art. 593.1 provides:

A. After commencement of an action by or on behalf of parties alleged to be members of a class, the court, on its own motion, or on the motion of any party or on trial of any exception directed to such issue, shall determine whether the action may be properly maintained as a class action as a prerequisite to any further proceedings therein. If the court finds that the action should be maintained as a class action, it shall certify the action accordingly; otherwise the action shall be dismissed. The court may permit amendment of the pleadings in the action to permit maintenance thereof as an ordinary proceeding on behalf of parties expressly named therein.
B. In the process of class certification or at any time thereafter before decision on the merits, the court may alter, amend or recall its certification and may enlarge, restrict, or otherwise redefine the constituency of the class or the issues to be maintained in the class action.
C. After determining that the pending action is appropriate for litigation as a class action, the court may, on its own motion or on the motion or recommendation of any party, adopt a plan for the management of the class action litigation, which may include provisions for subdivision of the action or separation of the issues therein raised, to which these rules of procedure shall be applicable as though each were a separate action. The management plan may provide for separate trials of separate issues and, if jury trial has been requested and is otherwise permissible, each separate trial may be heard before the same or another jury as the court may direct in the interest of justice. The management plan may provide for separate trials of the following issues in the order herein set forth:
(1) Liability for all damages.
(2) Determination of any item of damage common to the class and the basis for assessment thereof.
(3) Assessment of common damages on the basis determined in (2) above or on such basis as may be appropriate in the absence of any prior determination of the basis thereof.
(4) Determination and assessment of individual damages not common to the class, either in one trial or in a series of trials involving one or more members of the class.
D. The court may sign a judgment after trial of any separate issue or it may, in the interest of justice, withhold the signing of a judgment on any issue until all issues have been adjudicated. In no event shall the court sign any judgment awarding damages unless and until a judgment has been previously signed adjudicating all liability issues.
[1] All proceedings for certifying the class action occurred in 1988. The Louisiana Code of Evidence was enacted by Acts 1988, No. 515, effective January 1, 1989, and was not applicable.
[2] The Louisiana Evidence Code art. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted."
[3] The erroneous introduction of the affidavits did not interdict the trial court's factual and discretionary rulings on the class certification issue. The error was harmless as to that issue.