IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 95-30604

LYNN GANSAR ZATARAIN,

Plaintiff-Appellant,

VERSUS

WDSU-TELEVISION, INC. and JOHN F.
CARPENTER,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

February 7, 1996

Before KING, DAVIS and BARKSDALE, Circuit Judges.

PER CURIAM:[1]

Lynn Gansar Zatarain appeals from the grant of summary judgment dismissing her

employment discrimination suit against WDSU-Television, Inc, Pulitzer Broadcasting Co.,

and John Carpenter. We have jurisdiction, 28 U.S.C. § 1291, and we now affirm.

---

[1]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

I.

From 1983 to November 1992, WDSU employed Lynn Gansar Zatarain as a reporter and news anchor. In 1990, Zatarain began anchoring the three evening newscasts at 5:00 P.M., 6:00 P.M., and 10:00 P.M. As part of this schedule, Zatarain arrived at work at 3:00 P.M. and remained there until after the 10:00 P.M. newscast. In October 1990, Zatarain and WDSU entered into a personal services contract set to expire on November 30, 1992.

In July 1992, Zatarain, who suffered from infertility, began receiving medical treatment for her condition. In October 1992, her doctor, David Curole of The Fertility Institute, prescribed timed pergonal injections in order to increase Zatarain's chances to conceive. Zatarain notified WDSU that she needed to go to her doctor's office in between 4:00 and 6:00 P.M. in order to receive the injections and WDSU agreed to allow her to report for work late to allow her to visit the doctor's office before work. Zatarain continued, however, to anchor all three evening newscasts.

On September 30, 1992, WDSU offered Zatarain a new contract with $168,000 as an annual salary. After Zatarain rejected this offer, WDSU offered her a two-year contract with a salary of $170,000 in the first year and $175,000 in the second. During this time period, other networks evidently made competing offers to Zatarain.

In early November 1992, Dr. Curole recommended that Zatarain reduce the number of newscasts she was performing in order to decrease her stress level. Zatarain informed WDSU of her doctor's recommendation and asked to be relieved of the 5:00 P.M. newscast. In addition, she asked to go home after the 6:00 P.M. newscast and return at 9:00 P.M. for the 10:00 P.M. newscast. After Zatarain asked for this reduced work schedule, WDSU retracted its offer and allowed her contract to expire on November 30, 1992.

On December 30, 1992, Zatarain sued WDSU in Louisiana state court, alleging that WDSU had violated Louisiana state anti-discrimination laws prohibiting pregnancy discrimination. On March 28, 1994, while the state court proceedings were pending, Zatarain sued WDSU and its general manager, John Carpenter, in federal court. She alleged that WDSU's decision to terminate her employment contract violated the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and Title VII, 42 U.S.C. § 2000e et seq., as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k).[2]

On December 6, 1994, WDSU and Carpenter moved for summary judgment on Zatarain's ADA claim, arguing, first, that infertility is not a disability and, second, that the ADA did not obligate WDSU to reasonably accommodate her desire to have children. Carpenter sought dismissal on the grounds that he was not an "employer" subject to Title VII or the ADA. On January 18, 1995, the district court granted both motions, dismissing Zatarain's ADA claim against WDSU and both her Title VII and ADA claims against Carpenter.

In April 1995, Zatarain's state court action went to trial. The jury returned a verdict in favor of WDSU, and, on April 7, 1995, the court entered judgment against Zatarain on her state employment discrimination claim. The court denied Zatarain's motion for a new trial, and her appeal is now pending before the Louisiana Court of Appeals.

On April 13, 1995, following the entry of the state court judgment, WDSU and Pulitzer moved for summary judgment in federal court on Zatarain's remaining Title VII and PDA claims. Specifically, they claimed that the state court judgment was res judicata and that, consequently, her federal claims were barred by the state court judgment. The district

_____

[2] Zatarain amended her complaint on March 17, 1995 to name Pulitzer Broadcasting Company, the parent of WDSU, as an additional defendant.

court agreed and, on May 12, 1995, entered final judgment dismissing all of her federal claims. This timely appeal followed.

Zatarain makes two arguments on appeal. First, she alleges that the district court erred in dismissing her ADA claim. Specifically, she claims that she suffers from a disability since infertility is an "impairment that substantially limits one or more the major life activities" as defined by the ADA. Second, she argues that the district court erred in holding that the prior state court judgment barred her Title VII and PDA claims against WDSU and Pulitzer. We agree that the state court judgment barred the subsequent litigation of her federal claims in federal court. Moreover, because the preclusive effect of the state court judgment also encompasses her ADA claim, we affirm the dismissal of Zatarain's ADA claim against WDSU and do not reach the merits of her ADA argument.

II.

Federal courts, asked to give res judicata effect to a state court judgment, must give the same preclusive effect to the state court judgment as that state's courts would give to it. 28 U.S.C. § 1738; Kremer v. Chemical Construction Corp., 456 U.S. 461, 466 (1982); Hernandez v. City of Lafayette, 699 F.2d 734, 736 (5th Cir. 1983). In this suit, Louisiana law governs the res judicata effect of the prior judgment rendered by the Louisiana Civil District Court.

In 1990, Louisiana amended its res judicata statute to provide:

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

\* \* \*

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars subsequent action on those causes of action.

LSA-R.S. 13:4231. The consequence of this statute is that "all actions arising out of the same transaction or occurrence must be brought together or be subject to a plea of res

4

judicata." Everything on Wheels Subaru, Inc. v. Subaru, Inc., 616 So.2d 1234, 1238 (La. 1993).

Zatarain does not dispute that her federal and state court actions arose out of the same transaction or occurrence. Indeed, Zatarain's Title VII and PDA claims both arose from WDSU's refusal to renew her contract. Although the district court dismissed her ADA claims on different grounds prior to the state court rendering its judgment, the prior state court judgment also bars the ADA claim since it too arose from the same underlying facts.

Zatarain responds that no preclusive effect attaches to the state court judgment because her appeal from that judgment is still pending. We disagree.

Under Louisiana law prior to 1991, no res judicata effect attached to state court judgments while an appeal was pending. See Byrne, Vance & Co. v. Prather, 27 La. 539, 539, 14 La. Ann. 653 (1859). The 1990 amendment to Louisiana's res judicata statute marked a change in Louisiana law regarding the effect of a pending appeal. As the comments to the new statutory language make clear, "the preclusive effect of a judgment attaches once a final judgment has been signed by the trial court and would bar any action filed thereafter unless the judgment is reversed on appeal." LSA-R.S. 13:4231 comment d; see also Centanni v. Ford Motor Co., 636 So.2d 1153, 1155 (La. Ct. App.), writ denied, 644 So.2d 656 (La. 1994). In this case, the Louisiana state court judgment's preclusive effect attached when the trial court rendered its judgment. Although its preclusive effect would lapse if it is reversed by the Louisiana court of appeals, Allen v. Louisiana State Bd. of Dentistry, 603 So.2d 238, 243 (La. Ct. App. 1992), its preclusive effect remains until that eventuality, which may never occur, comes to pass.

Zatarain next claims that, even if preclusive effect attaches, the state court litigation does not bar Zatarain claims "[i]f . . . the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion)." Appellant's Brief at 30 (quoting

5

Reeder v. Succession of Palmer, 623 So.2d 1268 (La. 1993)). Although Zatarain concedes, as she must, that the Louisiana state courts have concurrent jurisdiction over Title VII and ADA claims, Yellow Freight Systems, Inc. v. Donnelly, 494 U.S. 820, 826 (1990) (Title VII); Krouse v. American Sterilizer Co., 872 F.Supp. 203, 205-06 (W.D. Pa. 1994) (ADA), Zatarain argues that she could not have brought her Title VII or ADA claims in state court because she had to await the EEOC right-to-sue letter before filing those claims.

We are not persuaded that the requirement that she await receipt of the right-to-sue letter removed her from the ambit of Louisiana's res judicata statute. In Fleming v. Travenol Laboratories, Inc., 707 F.2d 829, 831 (5th Cir. 1983), we held that a prior judgment barred a subsequent Title VII action, even though the plaintiff had to await the EEOC right-to-sue letter. We noted that, to avoid the preclusive effect of the first judgment, the proper procedure for the plaintiff was to amend the complaint in the first action to add the Title VII claim. Id. at 834. Similarly, in Miller v. United States Postal Service, 825 F.2d 62, 64 (5th Cir. 1987), we expressly rejected the argument that the failure to exhaust administrative remedies and receive the EEOC right-to-sue letter immunized the plaintiff from the preclusive effect of a prior judgment.

In this suit, Zatarain filed her complaint with the EEOC on December 18, 1992. She did not receive the right-to-sue letter until March 17, 1994, well after she had commenced the state court litigation. That Zatarain was unable to bring her Title VII and ADA claims prior to the issuance of the EEOC's right-to-sue letter does not mean that the state court was without jurisdiction to hear those claims. To the contrary, Zatarain could have amended her state court complaint to include the Title VII and ADA claims once she received the right-to-sue letter.[3] Alternatively, if she preferred a federal forum, she could

---

[3] Zatarain claims that, by the time she received the right to sue letter, she could amend her complain only by leave of court or by written consent of the adverse party. See LSA-C.C.P. art. 1151. Zatarain argues that leave of the court was unavailable since

have awaited the right-to-sue letter before filing all of her claims, state and federal alike, in federal court. Indeed, she does not allege that the statute of limitations would have run on her state pregnancy discrimination claim had she waited until the receipt of the right-to-sue letter. In short, that federal law requires Zatarain to await a right-to-sue letter from the EEOC does not permit her to file her state law claims in state court and later file her Title VII and ADA claims in federal court, even though all her claims arise from the same occurrence or transaction.

Finally, in a related argument, Zatarain claims that her Title VII severance pay claim is not precluded because the Louisiana courts prevented her from litigating that claim in state court trial. Specifically, Zatarain alleges that on the eve of the state court trial, the Louisiana court of appeals issued a supervisory writ directing the trial court not to admit evidence of discrimination regarding WDSU's grant of severance pay.

We are not persuaded that the Louisiana court of appeals prohibited the state trial court from adjudicating a claim that was before it. Rather, the Louisiana court of appeals directed the trial court to exclude evidence of an arbitrator's opinion, an opinion regarding whether severance pay was due Zatarain, "[b]ecause no claim for severance pay is pending before the district court." We read the court of appeals' decision as holding that there was no Title VII severance claim before the state trial court, not that the district court was without jurisdiction to hear such a claim had Zatarain actually brought it as part of the state court litigation. Zatarain failed to bring a Title VII claim as part of her state court complaint. She cannot now complain of the effects of her decision to split her claims.

III.

_____

her ADA claim asserts a different demand from the relief sought by her state pregnancy discrimination claim and presents different substantive issues. We disagree.

In Louisiana, the decision whether to grant leave to amend is within the sound discretion of the trial court. First Guaranty Bank v. Pineywood Partnership, 569 So.2d 209, 212 (La. Ct. App. 1990). Zatarain did not even attempt to amend her state court complaint.

7

Zatarain decided to split her claims arising out of WDSU's termination of her employment in November 1992. Res judicata prohibits such strategic manipulation of the litigation process. We AFFIRM the judgment of the district court.