FOURNET, Chief Justice.
This suit was instituted on January 11, 1954, by A1 Ohanna to have his wife, Marguerite Sassoon Ohanna, interdicted on the ground that she “has not the power or capacity to take care of her property, or her person,” due to the fact that she is “subject to an habitual state of insanity.” From a judgment dismissing his suit, he prosecutes this appeal.
Counsel for plaintiff in a very perfunctory brief, without citation of authority or analysis of evidence,. contends the trial judge in dismissing his suit committed three errors: (1) In refusing to interdict Mrs. Ohanna although he proved through the .testimony of the plaintiff, a psychiatrist, and several witnesses that the defendant was insane, (2) in not examining alleged “insane writings” of the defendant, and (3) in failing to take into consideration the failure of the defendant to produce a psychiatrist to establish her sanity or to take the stand in her own behalf.
In an interdiction proceeding the plaintiff has the burden of establishing the incapacity of the defendant, and we know of no law that requires a defendant in such a case to establish by positive evidence sanity, as suggested by counsel, particularly when a perusal of the record in the case, as here, unmistakably shows the plaintiff has failed miserably to carry his burden of establishing the defendant is insane or unable to care for herself and her property. Furthermore, the so-called “insane writings” of the defendant, .undated and unsigned and discovered some two years prior to the institution of the interdiction proceedings, could have no bearing on her mental condition at the time of the trial.
The only witness [1] who testified as to Mrs. Ohanna’s insanity was Dr. Herbert *387 R. Unsworth, called as an expert psychiatrist. Dr. Unsworth admitted he saw the defendant only one time for about 45 minutes, and this was some 6 months prior to the time he was testifying in October of 1954. According to his testimony she, at that time, not only “appeared to be as normal as you and I are supposed to be,” but, also, he could not “identify her as being a psychotic through one conversation.” His opinion as to her mental condition was based entirely on her history as given by her husband, and also on the record made up by the De Paul Sanitarium which consists largely of her history as given to that institution by the husband at the time he had her committed there in the spring of 1952 under coroner’s orders.
In the first place, it was established on cross-examination of the husband that much of the family history given by him was incorrect, as, for example, that defendant’s mother had died in a home for the aged, not in an asylum, as he had represented. Furthermore, the De Paul records, made more than two years previous to the institution of this suit, do not support the plaintiff’s charges, for Mrs. Ohanna is described therein as one “who does not appear acutely ill,” as “very cooperative since admission,” and “doing well;” further, that she used “good judgment.” Her progress report shows she was found to be' “in good contact with reality and expressed no delusional content.” Finally, the plaintiff did not himself testify that his wife was insane. He readily admitted he did not know and had instituted the interdiction proceedings to have this judicially determined. In fact, his testimony, as well as that of a number of her neighbors and friends, is to the effect that Mrs. Ohanna kept her home neat and clean, was exceptionally neat herself, and took excellent care of her children, who were well behaved and whose custody had been entrusted to her in her separation and divorce proceedings filed against the plaintiff following her release from De Paul Sanitarium shortly after her commitment there in the spring of 1952. See, Ohanna v. Ohanna, 229 La. 942, 87 So.2d 299.
From an examination of the record in the separation and divorce proceedings, together with the testimony of the plaintiff in the instant case, we gather a rather strong impression that the motive for this proceeding was a desire on plaintiff’s part' to avoid the dissolution of the community assets in the former proceedings so that he could remain in control of them.
For the reasons assigned, the judgment appealed from is affirmed.

. There were four other witnesses called by the plaintiff than himself and Dr. Unsworth: (1) Mrs. Irene H. Cooper, medical librarian of De Paul Sanitarium, who produced the records sought to be filed but could not identify them since she had not prepared them; (2) Dr. IT. W. Brewer, who had handled Mrs. Ohanna while at the institution and was asked only *387 to identify these records, but limited his identification to the very small part thereof entered by himself; (3) Dr. N. H. Rucker, who identified a letter he addressed to the plaintiff in February of 1952 expressing the opinion-Mrs. Ohanna was ill and recommending her hospitalization for treatment; and (4) Mrs. J. T. Byrnes, the policewoman who accompanied police officers bodily taking Mrs. Ohanna to De Paul under order of the coroner secured at the instance of the accused in early 1952.