**BERK–COHEN ASSOCIATES, L.L.C.**

v.

**ORKIN EXTERMINATING CO.**

No. Civ.A. 94–3090.

United States District Court, E.D. Louisiana.

May 23, 2003.

James Richard Swanson, Loretta G. Mince, Correro, Fishman, Haygood, Phelps, Walmsley & Casteix, LLP, New Orleans, LA, Jerald L. Album, Reich, Meeks & Treadaway, Metaire, LA, Thomas A. Roberts, McGlinchey, Stafford, PLLC, New Orleans, LA, Suzanne M. Ganucheau, Pajares & Schexnaydre, LLC, Covington, LA, for plaintiff.

Brett A. North, Garvey, Smith, Nehrbass & Doody, LLC, Metaire, LA, Quentin F. Urquhart, Jr., David Michael Melancon,

Irwin, Fritchie, Urquhart & Moore, LLC, New Orleans, LA, for defendant.

## ORDER & REASONS

FALLON, District Judge.

Before the Court is Plaintiff Berk–Cohen Associates, L.L.C.'s motion to vacate the arbitration award and Defendant Orkin Exterminating Company's motion to vacate or modify the arbitration award. For the following reasons, both motions are DENIED and the arbitration award is AFFIRMED.

## I. BACKGROUND

This case involves an arbitration award resulting from a dispute over a termite contract entered into by Orkin Exterminating Company for treatment of the Forest Isle Apartments in 1981. The Forest Isle Apartments is a 66 building, 707 unit apartment complex built in 1971. Berk–Cohen, the Plaintiff, bought the Forest Isle apartments in 1988 and acquired with it all of the prior owner's rights under the Orkin contract, which has been continuously in force since that time by the payment of the annual renewal charge. Although the termite contract was in effect since 1981, Forest Isle has been extensively infested with termites and sustained significant damage requiring future repairs estimated to be in the millions. In 1993, Berk–Cohen enlisted the former head of the Louisiana Structural Pest Control Committee to deal with the termite problem, who advised Berk–Cohen that Orkin's work violated several state law standards. Orkin subsequently agreed to retreat the property; however, Orkin again failed to follow state law standards. Berk–Cohen filed this suit in 1994 against Orkin for damages. During the pendency of the suit, Berk–Cohen continued to pay the annual renewals to keep the contract in force and Orkin continued to treat the property

for active termite infestations. However, Orkin continuously failed to bring the work up to state law standards.

In 1997, the parties agreed to enter binding arbitration. On December 5, 2002, the arbitration panel issued a 56 page award after 26 days of the arbitration hearing. The arbitration panel found that Orkin was grossly negligent in treating the property and was liable for damages. However, the arbitration panel concluded that Berk–Cohen was also culpable for failing to mitigate their damages. Accordingly, the arbitrators reduced the damage amount by the comparative fault of Berk–Cohen and its failure to mitigate damages. Comparative fault was based on the fact that the property was not treated for termites from 1971 to 1981, and circumstantial evidence suggested that termite activity existed at that time. In addition, the arbitrators found that certain construction defects and maintenance contributed to the termite infestation. Berk–Cohen's failure to mitigate its damages was based on its failure to fire Orkin and hire a new termite company in 1994.

The total damages awarded was $1,027,003.67 for past repair costs; $6,476.81 in past lost rents; $274,950.00 for visible unrepaired damages; and $1,500,000 for hidden termite damage. The total of these awards was reduced by two-thirds for Berk–Cohen's comparative fault and failure to mitigate damages. In addition, the arbitrators awarded $12,782 for amounts paid by Berk–Cohen to obtain formosan termite treatments after Orkin wrongfully began charging for these treatments on January 28, 2000, and $120,000 for the cost of obtaining the complete ground treatment which Orkin never provided. These amounts were not reduced by two-thirds. Finally, the arbitrators awarded judicial interest to Berk–Cohen from the date of judicial demand on all

damages except those damages awarded for amounts paid by Berk–Cohen to obtain formosan termite treatments after January 28, 2000 and for the cost of having the Forest Isle completely retreated. Judicial interest was awarded on these amounts from January 28, 2000 and from the date of the award, respectively. In addition, the arbitrators assessed all costs of the arbitration proceedings against Orkin.

Plaintiff Berk–Cohen filed a motion to vacate the arbitration award and Defendant Orkin filed a motion to vacate or modify the arbitration award. Both motions are based on different aspects of the arbitration award.

## II. LAW AND ANALYSIS

The Federal Arbitration Act (FAA) applies in this case, providing several grounds for a district court to review an arbitration award. 9 U.S.C. § 10(a) (1999). It must be noted at the outset that a district court's review of an arbitration award is usually "extraordinarily narrow." *Antwine v. Prudential Bache Securities, Inc.*, 899 F.2d 410, 413 (5th Cir.1990). Under the FAA, a district court may vacate an award: (1) where the award was procured by corruption, fraud or undue means; (2) where there was evident partiality or corruption in the arbitrators; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; and (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made. 9 U.S.C.A. § 10.

In addition to the statutory grounds listed above, the Fifth Circuit has recognized non-statutory grounds as a basis for a district court to review an arbitration award. Three non-statutory grounds are (1) the arbitrator's manifest disregard for the law; (2) arbitrary and capricious award; and (3) award's failure to draw its essence from the underlying contract. *Williams v. Cigna Financial Advisors Inc.*, 197 F.3d 752, 758 (5th Cir.1999) (citations omitted). However, it is unclear if these non-statutory grounds for vacatur of an arbitration award are applicable in the case of commercial contracts under Fifth Circuit jurisprudence. A review of this jurisprudence illustrates this uncertainty.

In 1993, the Fifth Circuit decided *McIlroy v. PaineWebber, Inc.*, 989 F.2d 817 (5th Cir.1993), a case involving a client's claim against his securities brokerage firm, in which the court stated that "in this Circuit, section 10 of the Arbitration Act describes the only grounds upon which a reviewing court may vacate an arbitration award." The Court specifically noted that other courts had vacated arbitration awards that were made in manifest disregard of the law; however, the Fifth Circuit declined to adopt this standard. *Id.* at 820, fn. 2. Subsequently, in 1995, the United States Supreme Court gave credence to the application of the manifest disregard standard in *First Options of Chicago v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985, by stating in a parenthetical that "parties [are] bound by arbitrator's decision not in manifest disregard of the law."

After the approval of the manifest disregard standard in *First Options,* the Fifth Circuit next had an opportunity to revisit the issue of the appropriate standard of review in *Williams v. Cigna Financial Advisors, Inc.* In *Williams,* the court adopted the manifest disregard for the law standard as a non-statutory ground for reviewing arbitration awards. 197 F.3d 752, 758. The court explained that several

courts have recognized non-statutory grounds for review of arbitration awards in cases involving the Labor Management Relations Act and FAA cases. *Id.* The non-statutory grounds listed included arbitrary and capricious and an award's failure to draw its essence from the underlying contract. However, the *Williams* case involved claims under the ADEA, and the court noted that its decision on the applicable standard would have implications for review of claims under the FAA involving Title VII of the Civil Rights Act of 1964 and other federal employment rights statutes, thereby creating doubt as to whether the same standards of review could apply in a commercial contract case.

The district courts have split over the application of *Williams.* Some courts have been hesitant to apply such standards of review to commercial contract cases, viewing the *Williams* decision as limited to labor arbitrations. *Broadscape.com, Inc. v. KDS USA, Inc.,* No. 01–0607, 2001 WL 1063895 (E.D.La. Sept.12, 2001) (recognizing that Fifth Circuit has not approved of manifest disregard standard in commercial contract cases and declining to adopt it in such case); *Morgan Keegan & Co. v. Lalonde,* No. 00–2520, 2001 WL 43600 (E.D.La. Jan.16, 2001) (same); *Evans Industries, Inc. v. Lexington Ins. Co.,* No. 01–1546, 2001 WL 803772 (E.D.La. July 12, 2001) (same). On the other hand, other courts have readily applied the non-statutory grounds listed in the *Williams* decision to commercial contract cases. *Ergobilt, Inc. v. Neutral Posture Ergonomics, Inc.,* No. 97–2548, 2002 WL 1489521 (N.D.Tex. July 9, 2002) (recognizing manifest disregard, arbitrary and capricious, and essence of underlying contract as non-statutory grounds to review arbitration award under Fifth Circuit jurisprudence); *Downer v. Siegel,* No. 02–2733, 2002 WL 31106920 (E.D.La. Sept.19, 2002) (same); *Lummus Global Amazonas, S.A. v.*

*Aguaytia Energy del Peru, S.R.,* No. 01–495, 2002 WL 31401996, (S.D.Tex. Mar.27, 2002) (same); *AFD Fund v. Midland Management, LLC.,* No. 02–0055, 2002 WL 731813 (N.D.Tex. Apr.22, 2002) (recognizing manifest disregard and arbitrary and capricious standard).

Since the *Williams* decision, the Fifth Circuit has touched on the issue of the vacatur standard for arbitration awards on three occasions. In June of 2001, in a case involving an arbitration award of an employee's claim for intentional infliction of emotional distress, the Fifth Circuit, in a footnote, recognized the manifest disregard standard in addition to the statutory grounds citing *Williams. Hughes Training, Inc. v. Cook,* 254 F.3d 588, 593 n. 4 (5th Cir.2001). Subsequently, in 2002, the Fifth Circuit decided *Harris v. Parker College of Chiropractic,* 286 F.3d 790, in which the court reviewed an arbitration award in a Title VII case. The Fifth Circuit again cited *Williams* for the proposition that manifest disregard of the law was an additional ground to vacate an arbitration award. Finally, only a few months later, the Fifth Circuit was faced with a similar case reviewing an arbitration award involving a breach of contract. *Brook v. Peak Int'l.,* 294 F.3d 668, 672 (5th Cir.2002). In discussing the standard of review for an arbitration award, the Fifth Circuit cited *McIlroy* for the rule that section 10 of the FAA provides the *only* grounds for vacating an arbitration award, without discussion of *Williams* or *First Options. Id.*

The Fifth Circuit has not directly addressed the issue again after the *Brooks* case. However, in a concurring opinion in *Primerica Life Ins. Co. v. Brown,* 304 F.3d 469, 473 (5th Cir.2000), a breach of contract case, Judge Dennis recognized four non-statutory grounds for vacating an arbitration award, citing the *Williams* case.

At present, a fair reading of the cases leads to the conclusion that the law in the Fifth Circuit is unsettled over the appropriate standard of review of an arbitration award in a commercial contract case. This Court need not struggle to search for guideposts in this jurisprudential fog because the result is the same under either standard.

In the present case, the parties do not raise any of the statutory grounds as possible grounds to vacate the award. The parties instead argue the non-statutory grounds as a basis for vacatur, i.e. that the arbitration award was in manifest disregard of the law, that it was arbitrary and capricious, and that the award fails to draw its essence from the underlying contract. If the standard of review by this Court is limited to the statutory grounds set forth in the Federal Arbitration Act, clearly the arbitration award in this case is not reviewable. However, even if this Court applied the non-statutory grounds for vacating an arbitration award, none of the grounds necessitate vacating the award in this case.

 The first non-statutory ground that Berk–Cohen argues is applicable in this case is that the arbitration award was arbitrary and capricious. An award is arbitrary and capricious when it is so palpably faulty that no judge, or a group of judges, could ever conceivably have made such a ruling. *Ergobilt*, 2002 WL 1489521, at *2 (citing *Safeway Stores v. American Bakery and Confectionery Workers Local 111*, 390 F.2d 79, 83 (5th Cir.1968)). Additionally, "for an award to be vacated as arbitrary and capricious, the panel's award must contain more than an error of law or interpretation." *Id.* (citing *Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 781 (11th Cir.1993)). "The award must either exhibit 'a wholesale departure from the law,' or 'not [be] grounded in the

contract which provided for the arbitration.'" *Id.* This ground is not applicable to the present case.

 The second non-statutory ground that both parties argue is a ground to vacate the arbitration award is that the award was made in manifest disregard of the law. This ground consists of a two step test: (1) where on the basis of the information available to the Court it is not manifest that the arbitrators acted contrary to applicable law, the award should be upheld; (2) where on the basis of the information available to the court it is manifest that the arbitrators acted contrary to the applicable law, the award should be upheld unless it would result in significant injustice, taking into account all of the circumstances of the case, including the power of arbitrators to judge norms appropriate to the relations between the parties. *Lummus Global Amazonas, S.A.*, 2002 WL 31401996 at *8 (citing *Williams*, 197 F.3d at 762). Furthermore, manifest disregard means more than error or misunderstanding with respect to the law. *Id.* (citing *Merrill Lynch Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir.1986)). "To modify or vacate an award on this ground, 'a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.'" *Id.* (citing *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir.1997)). The facts of the present case do not fit within this ground.

 Finally, the third ground that Berk–Cohen argues is a ground to vacate the award is that the award failed to draw its essence from the underlying contract. "Under this test, the court must determine whether the arbitrators' award 'was so unfounded in reason and fact, so unconnected

with the wording and purpose of the [arbitration agreement] as to manifest an infidelity to the obligation of the arbitrator.'" *Ergobilt,* 2002 WL 1489521, at *3 (citing *Executone Inform. Sys., Inc. v. Davis,* 26 F.3d 1314, 1320 (5th Cir.1994)). "The single question is whether the award, however arrived at, is rationally inferable from the contract." *Id.* (citations omitted). All doubts whether an award draws its essence from the contract must be resolved in favor of the arbitrator. *Id.* (citations omitted). Vacatur of the arbitration award is not warranted based on this ground.

In addition to the motion to vacate the award, Orkin has filed a motion to vacate or modify the award. Although not briefed by the parties, the FAA provides different grounds for modifying or correcting an award than it does for vacating an award. Under 9 U.S.C.A. § 11, a district court may modify or correct an arbitration award upon the application of any party to the arbitration in three circumstances: (1) where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award; (2) where the arbitrators have decided an issue not submitted to them, unless it is an issue not affecting the merits of the decision upon the matter submitted; and (3) where the award is imperfect with regard to form and does not affect the merits of the controversy. The statute further provides that the order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties. 9 U.S.C.A. § 11 (1999). One Court has held that section 11 contains the exclusive grounds to modify an arbitration award. *Diapulse Corp. of America v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2d Cir.1980). However, Orkin does not assert any of the above grounds as a basis to modify the arbitration award.

Rather, Orkin's argument is based solely on the non-statutory grounds discussed above.

### 1. *Berk Cohen's Motion to Vacate the Arbitration Award:*

Berk–Cohen argues that the portion of the arbitration award concerning mitigation of damages was arbitrary and capricious, in manifest disregard for the law, and failed to take its essence from the underlying contract. As mentioned earlier, the arbitration panel found that Berk–Cohen failed to mitigate its damages by not firing Orkin in 1994 and hiring another company to treat the termites. Accordingly, the arbitrators reduced the damage award to Berk–Cohen on this basis. First, Berk–Cohen argues that under Louisiana law, an obligor may not demand that the obligee's damages be reduced for failure to mitigate where the obligor has available the means and opportunity to mitigate the damages itself. Berk–Cohen reasons that Orkin was therefore precluded from arguing/obtaining mitigation of damages because Orkin had the opportunity to treat the termites under the continuing contract with Berk–Cohen, yet failed to correctly treat the deficiencies or ever provide treatment up to state law standards.

Although the arbitrators considered relevant Louisiana law on this issue, Berk–Cohen complains that the arbitrators ignored one of the rules in a Louisiana Supreme Court case it considered. Specifically, Berk–Cohen points to the case of *Unverzagt v. Young Builders, Inc.,* 252 La. 1091, 215 So.2d 823 (1968). In *Unverzagt,* the court stated "the duty to mitigate the damages is not applicable where the party whose duty it is primarily to perform a contract has equal opportunity for performance and equal knowledge of the consequences of non-performance." "In such cases, while the contract is subsisting and

in force, such party cannot be heard to say that Plaintiff might have performed for him." *Id.* It is Berk–Cohen's position that Orkin had the opportunity for performance and had equal knowledge of the consequences of non-performance and, therefore, mitigation of damages cannot apply. Berk–Cohen cites a number of cases and sources for this proposition. Specifically, Berk–Cohen cites two Louisiana cases which the arbitrators did not include in their opinion: *Heap v. Weber Construction Co. of Louisiana, Inc.,* 407 So.2d 799 (La. Ct.App. 4th Cir.1981) and *Campagna v. Smallwood,* 428 So.2d 1343 (La.Ct.App. 4th Cir.1983).

In *Heap,* a homeowner sued for defects in the construction of his home after experiencing a leakage problem over a long term period. The homeowner had made repeated complaints to the contractor, who then subsequently sent a worker out to the house on a few occasions to attempt to fix the problems. The court held that the Plaintiff's award should not be reduced due to the duty to mitigate damages. Citing *Unverzagt,* the court found that the duty to mitigate did not apply when the party whose primary duty it is to perform had equal opportunity for performance and equal knowledge of the consequences of non-performance. Applying this principle to the facts, the court explained that the homeowner had repeatedly informed the contractor of the problems and gave him an opportunity to repair the defect; therefore, the court found that there was no basis to penalize the homeowner for failing to make the needed repairs himself.

In the *Campagna* case, the plaintiff sued the building contractor for problems/defects with the construction of a metal building. After problems became evident, the plaintiff refused to allow the contractor to perform any more work or attempt further repairs. The court held that be-

cause the plaintiff decided that the contractor's work was defective and refused him any opportunity to repair the damage, the plaintiff had a duty to mitigate his losses by having the work completed after dismissing the defendant and the court reduced plaintiff's damages accordingly. The court noted that the defendant was not afforded an equal opportunity with plaintiff to effect repairs and, therefore, he should not be penalized for the delay.

The arbitrators did not mention either of these two decisions in their analysis of the mitigation of damages issue. Instead, the arbitration panel focused on the standard for mitigation of damages as enunciated in the *Unverzagt* case—"the standard applied in determining which damages should have been avoided is that of 'a reasonably prudent person acting under the facts and circumstances in which the non-defaulting party finds himself. . . .' " The arbitration panel also cited *Julius Cohen Jeweler, Inc. v. Succession of Jumonville,* 506 So.2d 535 (La.Ct.App. 1st Cir.1987), for the proposition that the doctrine of mitigation of damages may require the nondefaulting party to expend reasonable sums to avoid additional losses.

Applying these concepts, the arbitration panel found that Berk–Cohen failed to mitigate its damages in 1994 after Orkin breached its agreement to provide a 100% complete ground treatment. The arbitration panel reviewed the facts that led it to conclude that a reasonable owner would have fired Orkin and hired a new company: Berk–Cohen attempted to resolve its problems with Orkin from 1993 to 1994; Berk–Cohen agreed to keep Orkin on the job despite original complaints because Orkin promised to retreat the property for no additional cost; Berk–Cohen continued to complain about the treatment; Orkin later repudiated its promise to provide a complete ground termite treatment at which

point Berk–Cohen became fed up with Orkin's service and filed this suit; nevertheless, Berk–Cohen kept the termite contract in force. Based on these facts, the arbitration panel found that a reasonable prudent person would have fired Orkin in 1994 and hired a new company to treat the termites. There was evidence that Berk–Cohen had obtained bids from other companies for complete ground treatment in 1992 at a price of $136,988. There was also testimony that had Berk–Cohen hired a new company in 1994, it would have witnessed drastic improvements in its termite problem in a short time. Accordingly, the arbitrators found that Berk–Cohen could have significantly minimized the damages without incurring an undue financial expense.

The arbitration panel referenced the *Calais v. Dura–White Roofs Co.,* 208 So.2d 397 (La.Ct.App. 4th Cir.1968), where the court held that a homeowner was obligated to minimize the damage resulting from a roofer's faulty workmanship and could not recover because of an increase in damage caused by the delay. Additionally, the arbitration panel referenced a Louisiana decision specifically dealing with a termite contract, *Higdon v. Orkin Exterminating Co.,* 412 So.2d 720 (La.Ct.App.3d Cir.1982), where the court found that a homeowner had acted reasonably to mitigate his damages by firing Orkin after they failed to control the termites at his home and hiring a new exterminator to prevent further damage. In *Higdon,* the court awarded as an item of damages against Orkin the amount the homeowner paid to the new exterminator.

As a second basis of attack of the arbitrator's application of the law, Berk–Cohen argues that the doctrine of mitigation of damages does not require the non-defaulting party to give up valuable rights, citing *Langlois v. Allied Chem. Corp.,* 258 La. 1067, 249 So.2d 133 (1971). In addition, Berk–Cohen cites several other cases that provide the same concept, including one cited by the arbitrators, the *Julius Cohen Jeweler, Inc. v. Succession of Jumonville,* 506 So.2d 535 (La.Ct.App. 1st Cir.1987). According to Berk–Cohen, despite the clear law on this concept, the arbitrators ignored it by finding that Berk–Cohen was obligated to terminate its contract with Orkin and hire a new company to treat the termites in order to mitigate its damages. It is Berk–Cohen's position that its contract with Orkin was a valuable legal right because it contained a lifetime renewal option allowing the contract to be renewed indefinitely by paying the annual fee, which could not be raised more than 10% each year. Berk–Cohen contends that this was a valuable right because it would not have been able to get another contract with the same favorable renewal option. Thus, Berk–Cohen argues that the arbitrators did not apply the law when it found that Berk–Cohen did not mitigate its damages by terminating its contract with Orkin, a valuable right to Berk–Cohen.

■ The first standard of review for vacating the arbitration award that Berk–Cohen argues is applicable is that the award was arbitrary and capricious. As mentioned above, an award is arbitrary and capricious when it is so palpably faulty that no judge, or a group of judges, could ever conceivably have made such a ruling. Additionally, for an award to be vacated as arbitrary and capricious, the panel's award must contain more than an error of law or interpretation. The award must either exhibit a wholesale departure from the law, or not be grounded in the contract which provided for the arbitration. First, it is questionable whether "arbitrary and capricious" is a proper ground to vacate an arbitration award in this Circuit, as discussed above. However, even if the stan-

dard does apply, the arbitration award on the issue of mitigation of damages is not arbitrary and capricious. The arbitration panel considered and applied the applicable law. Both sides in this dispute can isolate rules in the *Unverzagt* decision that favor its position when stated out of context from the rest of the opinion. However, when reading the whole opinion, which explains several factors that need to be considered when determining whether mitigation of damages applies, the opinion stresses the proper standard as being that of a reasonable person-the same standard that the arbitration panel applied. In addition, the panel apparently relied on the *Higdon* case, which involved a similar fact pattern as this case, a termite contract, and other cases which are still good law and support its decision. In light of this, it cannot be said that the arbitration award was a wholesale departure from the law. With regard to the argument that the contract was a valuable legal right that Berk–Cohen was not required to relinquish, this Court is not convinced that the arbitrators' decision was arbitrary and capricious. Again, the case law relied on by the panel supports the approach that several factors must be considered in determining mitigation of damages, but the reasonable person standard is the overriding rule. While it may have been contrary to some cases not to place more emphasis on these factors, the arbitration award does not cross the line of being a wholesale departure from the law.

The second ground for vacating the arbitration award is that it manifestly disregarded the applicable law. This standard is somewhat similar to an arbitrary and capricious standard. As mentioned earlier, the manifest disregard of the law standard analysis has two steps: (1) where on the basis of the information available to the Court it is not manifest that the arbitrators acted contrary to applicable law,

the award should be upheld; (2) where on the basis of the information available to the court it is manifest that the arbitrators acted contrary to the applicable law, the award should be upheld unless it would result in significant injustice, taking into account all of the circumstances of the case, including the power of arbitrators to judge norms appropriate to the relations between the parties. For the same reasons explained above, the award on mitigation of damages is not manifestly contrary to applicable law.

■ Finally, Berk–Cohen argues that the arbitrators' decision on mitigation of damages fails to draw its essence from the underlying contract. First, it is important to note that it is questionable whether this is an accepted ground to vacate an arbitration award in a commercial contract case under the Fifth Circuit jurisprudence. Nevertheless, as mentioned earlier, the single question is whether the award, however arrived at, is rationally inferable from the contract. All doubts whether an award draws its essence from the contract must be resolved in favor of the arbitrator. Berk–Cohen argues that the lifetime renewal option with a capped increase in the rate was an important feature of the Orkin contract. Accordingly, Berk–Cohen contends that the ruling that Berk–Cohen must be penalized for failing to cancel the contract is contrary to the language and purpose of the contract. However, this Court finds that the arbitrators' award was rationally inferable from the contract because the purpose of the contract was to obtain effective treatment for termites. As the arbitrators found, Orkin failed to provide effective treatment for termites for a period of several years. It is rationally inferable that when the main purpose of a contract is not fulfilled, that the person seeking services will seek to end the contract. Therefore, the arbitration award

draws its essence from the underlying contract.

In conclusion, it is questionable if any of the above listed non-statutory grounds are a proper basis for this Court to vacate the arbitration award. However, even applying these standards, the arbitrators' award was in not manifest disregard of the law, arbitrary and capricious and did not fail to draw its essence from the underlying contract. Therefore, Plaintiff's motion to vacate the arbitration award must be denied.

### 2. *Orkin's Motion to Modify/Vacate the Arbitration Award:*

Orkin's motion to modify/vacate the arbitration award is focused on two issues that it argues were decided in manifest disregard of controlling precedent: (1) the arbitrators' award of legal interest and (2) the arbitrators' assessment of costs against Orkin. As mentioned earlier, the arbitrators awarded judicial interest to Berk–Cohen from the date of judicial demand on all damages except those damages awarded for amounts paid by Berk–Cohen to obtain formosan termite treatments after January 28, 2000 and for the cost of having the Forest Isle completely retreated. Judicial interest was awarded on these amounts from January 28, 2000 and from the date of the award, respectively. In addition, the arbitrators assessed all costs of the arbitration proceedings against Orkin.

What is interesting about Orkin's motion is that its sole argument for vacating the arbitration award with respect to interest and costs is based on the manifest disregard for the law standard. However, in its opposition to Berk–Cohen's motion to vacate the award, it takes the position that the manifest disregard of the law standard does not apply in the Fifth Circuit as a ground for vacating an arbitration award. Also, as noted above, Orkin does not assert any of the grounds listed above under 9 U.S.C.A. section 11 as a ground for modifying the award.

Nevertheless, with regard to the issue of judicial interest, Orkin argues that the arbitrators manifestly disregarded Louisiana law when they awarded legal interest from the date of judicial demand. Orkin contends that there is no statutory authority for the award of interest in a breach of contract case where the object of the performance is *not* a sum certain amount of money. According to Orkin, where the dispute involves recovery of damages due to an alleged failure to perform services under a contract, it is only after an award or judgment is rendered that a sum certain as to the amount of damages will be reached. Orkin cites *Amoco Production Co. v. Texas Meridian Resources Exploration, Inc.,* 180 F.3d 664 (5th Cir.1999), for the proposition that pre-judgment interest should not be awarded in breach of contract cases. It is Orkin's position that the arbitrators' reliance on *Trans–Global Alloy Limited v. First National Bank of Jefferson,* 583 So.2d 443 (La.1991) for its award of pre-judgment interest was manifest disregard of the controlling Fifth Circuit law under *Amoco.* Furthermore, Orkin argues that the award of pre-judgment interest was wholly inequitable because Berk–Cohen was responsible for significant delays in the arbitration process, which resulted in enlarging the time interest accrued. Additionally, the pre-judgment interest award leads to windfall to Berk–Cohen who has not even begun to make repairs and, therefore, the award is not compensating Berk–Cohen for any time loss of money.

Next, Orkin argues that the arbitrators' award of all costs and fees was manifestly unjust and should be vacated. The only law that Orkin cites as support for its argument that the parties should bear

costs provides that the trier of fact *may* assess costs in an equitable manner, including apportionment of costs on a prorata basis. (citing La.Code of Civ. Proc. art.1920; Fed. R. Civ. Proc. 54(d); various Louisiana cases). Based on this law, Orkin argues that the arbitration award was in manifest disregard of the law because it assessed all costs to Orkin.

In the arbitrators' analysis of the interest issue, the panel first points out that under the rules of the AAA Commercial Arbitration, the panel may include in its award interest at such rate and from such date as they deemed appropriate. Despite this, the panel accepted briefs from the parties on this issue and considered the applicable Louisiana law. The arbitrators recognized that the *Amoco* case does stand for the proposition that Orkin cited it for; however, the panel declined to follow it because it departed from well settled Louisiana law that in a breach of contract case, the defendant is liable for interest from the date of default or at the latest from date of judicial demand if the amount of the claim is not ascertainable at the time of default. The panel cited *Alexander v. Burroughs Corp.*, 359 So.2d 607 (La.1978), as the leading case on the issue, which held that all sums due on contracts bear interest from judicial demand, even where none has been stipulated, and the demand is unliquidated. After *Alexander,* the Louisiana Second Circuit decided *Mini Togs Products v. Wallace*, 513 So.2d 867 (La.Ct.App.2d Cir.1987), which the arbitration panel cited and in which the court held that a claim arising out of a contract, whether liquidated or not, bears legal interest from judicial demand (citing *Alexander*). Finally the arbitrators cited *Trans–Global Alloy Limited v. First National Bank of Jefferson Parish*, 583 So.2d 443 (La.1991), which held that in contract case where damages are not ascertainable until reduced to judgment, legal interest runs from the date of judicial demand. The Louisiana Supreme Court explained that this finding was consistent with long-standing Louisiana jurisprudence. In light of what it considered a well established Louisiana rule on interest in contract cases, the arbitrators followed this jurisprudence and did not apply the *Amoco* case.

Although the arbitrators expressly disregarded the *Amoco* decision, this does not show that the arbitrators acted in manifest disregard of the law. Because this was an issue of Louisiana law, the latest word from the Louisiana Supreme Court is controlling, and that is the rule that the arbitrators followed in this case. The *Amoco* decision, although it comes to an opposite conclusion, does not even cite the Louisiana cases discussed by the arbitrators that expressly answer this issue under Louisiana law. Federal courts must apply state law as the highest court of the state would apply it in state law questions. Therefore, the award was not in manifest disregard for the law on the issue of interest.

Finally, with regard to Orkin's argument on assessment of costs, this argument is without merit because it points to no law that the arbitrator manifestly disregarded. Rather, under the law that Orkin does cite, it is permissible for the costs to be assessed against one party. There are simply no grounds to vacate this portion of the award, even if it is inequitable to Orkin.

## III. CONCLUSION

For the foregoing reasons, the Plaintiff's motion to vacate the arbitration award and the Defendant's motion to vacate or modify the arbitration award are DENIED and the arbitration award is AFFIRMED.